932 F.2d 969
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Paul TKACZ, Plaintiff-Appellant,
v.
SEARS, ROEBUCK & COMPANY, Defendant-Appellee.
 No. 90-3668.
 United States Court of Appeals, Sixth Circuit.
 May 2, 1991.
 
 Before MERRITT, Chief Judge, and KENNEDY and NATHANIEL R. JONES, Circuit Judges.
 PER CURIAM.
 
 
 1
 In this age discrimination case, plaintiff-appellant Paul Tkacz appeals the district court's grant of summary judgment for defendant-appellee Sears Roebuck & Company. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 On April 7, 1989, Paul Tkacz filed a complaint in federal district court against Sears Roebuck & Company ("Sears") alleging discriminatory discharge based on age, pursuant to the ADEA, 29 U.S.C. Sec. 623. On February 28, 1990, Sears moved for summary judgment, and the court granted summary judgment in favor of Sears on June 21, 1990. This appeal followed.
 
 
 3
 Paul Tkacz was employed by Sears from November 3, 1969, until his discharge on May 5, 1985, when he was sixty-one years of age. At the time of his discharge, he was employed at the Sears store in Middleburg Heights, Ohio, as a salesman in the home improvement product services division.
 
 
 4
 Beginning in August 1986, Tkacz was counseled or reprimanded on numerous occasions for substandard performance, violations of store policies, and rudeness toward customers and staff. His immediate supervisor, Raymond Rini, counseled him on fourteen occasions prior to his discharge.
 
 
 5
 Tkacz's discharge arose out of the use of another employee's discount privileges. As a benefit to its employees, Sears permits employees to receive discounts on qualified purchases for themselves or their immediate dependent families. The Sears employee discount policy provides:
 
 
 6
 Every Sears employee ... is entitled to the designated discount on cash or credit purchases made in any Sears unit. The discount applies to merchandise purchases for his/her own use, and for the use of his/her spouse and dependent children with whom s/he lives. Children must be dependents of the employee for Federal Income Tax purposes.
 
 
 7
 Note: The discount is not allowed on merchandise an employee would purchase to be placed in property s/he does not live in, such as rentals.
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 Generally, employees are entitled to receive the discount privilege when buying gifts. However, in purchasing costly items which are to be delivered to an address other than an employee's home, management should verify the fact that a bona fide gift is involved, for which the employee will not receive reimbursement.
 
 
 11
 J.App. at 25.
 
 
 12
 In early March 1987, Lynne Jones contacted Sears regarding the purchase of replacement windows for her home. Tkacz arranged a meeting with Lynne Jones and her husband. A second meeting was arranged by Lynne Jones in mid-March. At this meeting, the price of installation was set at $3,158.00, and Jones indicated that she would use her Sears charge account to cover the purchase. The sale was rung by Tkacz on March 19, 1987.
 
 
 13
 Subsequently, Lynne Jones contacted Tkacz to inform him that her sister, Beth Birk, was a new Sears employee. Birk had been employed by Sears for four to six months as a telephone sales solicitor. Jones told Tkacz that Birk was willing to buy the windows for her on Birk's employee discount. Such action would result in a discount of about three hundred dollars. Birk was willing to do this in order to pay off a debt she owed to Jones. Tkacz would not benefit in any way if Jones received the employee discount.
 
 
 14
 Tkacz knew that Jones was not a dependent of Birk and that the employee discount could be used by employee's spouse and dependent children, but not by other relatives. Tkacz also knew that the proposed action would be proper only if Birk was making an outright gift to Jones. Finally, Tkacz knew that participation in an abuse of the employee discount policy, by either Birk or himself, could result in discharge.
 
 
 15
 In late April 1987, Tkacz scheduled an appointment with Jones and Birk. Birk did not come to the scheduled meeting and Tkacz left the paperwork with Jones for Birk to sign in order for the purchase to proceed as an employee discount purchase. Later, Jones returned the signed papers to Tkacz, and Tkacz never spoke with Birk to verify her signature.
 
 
 16
 Prior to the April meeting between Jones and Tkacz, Tkacz's supervisor, Raymond Rini, met with Tkacz concerning the Jones sale. Rini testified that "Tkacz initiated the conversation in order to discover how to cancel the initial order and not to discuss the appropriateness of the discount." Id. at 24. Tkacz said that he initiated the meeting with Rini because he was suspicious about the Jones sale. Tkacz testified that Rini first told him not to proceed with the sale but then said to proceed with it at Birk's risk. Rini stated that after reviewing the account he told Tkacz not to proceed with the sale as an employee discount.
 
 
 17
 On April 25, 1987, Tkacz and Jones completed the sale with an employee discount. Lynne Jones paid for the transaction with a personal check. Jones and Birk testified that the transaction was never intended as a gift.
 
 
 18
 Rini discovered the sale and contacted the store manager, Fred Brownell. After consulting with his regional manager, Rini, Tkacz, and Jones, Brownell discharged Tkacz on May 5, 1987, for violation of the discount policy and for insubordination. Birk, who worked at a different Sears store, was not discharged or suspended.
 
 II.
 
 19
 We review a district court's grant of summary judgment de novo. Pinney Dock and Transport Co. v. Penn. Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988). Generally, in an age discrimination case, the plaintiff must first establish a prima facie case by showing: (1) plaintiff was a member of a protected class; (2) plaintiff was subjected to an adverse employment action; (3) plaintiff qualified for the position; and (4) plaintiff was replaced by a person not a member of the protected class. Gagne v. Northwestern Nat'l Ins., 881 F.2d 309, 313 (6th Cir.1989). If plaintiff establishes a prima facie case of age discrimination, then the employer bears the burden of providing a legitimate nondiscriminatory reason for the adverse employment action. Id. (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Should the employer meet its burden, then the burden shifts back to the plaintiff to produce direct, indirect, or circumstantial evidence rebutting the employer's proffered reason for termination. Burdine, 450 U.S. at 253. "Unless the plaintiff introduces counter-affidavits and argumentation that demonstrate that there is reason to disbelieve this particular explanation, there is no genuine issue of material fact." Healey v. New York Life Ins., 860 F.2d 1209, 1215-16 (3d Cir.1988), cert. denied, 490 U.S. 1098 (1989).
 
 
 20
 The district court found that Tkacz clearly met the first two Gagne elements. The court stated that Tkacz's inability to meet the third and fourth elements did not end the inquiry because he could "present other reasonable evidence from which the fact finder could infer that he was denied a position or terminated based upon age." J.App. at 30 (citing Wanger v. G.A. Gray Co., 872 F.2d 142, 144-45 (6th Cir.1989) (commenting upon modified McDonnell Douglas test in age discrimination cases)). As other reasonable evidence of discrimination, Tkacz relied upon statistical evidence, dissimilar treatment, and the Rini conversation to establish a prima facie case.
 
 
 21
 Tkacz's statistical evidence purported to show that, contrary to national trends, the average age of employees at the Sears Middleburg store had decreased about ten years from 1983 to 1987. The district court rejected Tkacz's statistical evidence because the statistical report characterized as a termination any departure from Sears, regardless of the reason. Hence, the report included, among other irrelevant factors, departures due to retirement and voluntary terminations. The district court stated that because the report did not account for such factors, the results were "inevitably distorted." J.App. at 32. The court concluded that such distorted statistics could not be relied upon to prove either discrimination or pretext.
 
 
 22
 In Barnes v. Gencorp Inc., 896 F.2d 1457, 1466 (6th Cir.1989) (citations omitted), this court stated that
 
 
 23
 Appropriate statistical data showing an employer's pattern of conduct toward a protected class as a group can, if unrebutted, create an inference that a defendant discriminated against individual members of the class. To do so, the statistics must show a significant disparity and eliminate the most common nondiscriminatory explanations for the disparity.
 
 
 24
 In light of Barnes, we conclude that the district court did not err in rejecting Tkacz's statistical evidence. The report failed to eliminate common explanations for the listed employees' departure from Sears.
 
 
 25
 Tkacz also relied upon disparate treatment to establish his prima facie case. In Beaven v. Com. of Ky., 783 F.2d 672, 676 (6th Cir.1986), this court stated that a prima facie case of disparate treatment may be established by showing that plaintiff belonged to a protected class, had performed his job satisfactorily, was subjected to an adverse employment decision, and was treated differently than a similarly situated non-protected employee. See Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1186 (11th Cir.1984) ("When an individual proves that he was fired but one outside his class was retained although both violated the same work rule, this raises an inference that the rule was discriminatorily applied against that individual[.]"). Tkacz attempted to show disparate treatment by comparing the treatment he received with the treatment received by Birk for violating the employee discount policy. To make his case, Tkacz attempted to demonstrate that he and Birk were "similarly situated" because both were Sears employees subject to the policy. The district court held, however, that Birk was not similarly situated. The court's conclusion was based on four specific reasons: (1) Birk "was not employed in the Middleburg store and thus was not supervised by either Brownell or Rini;" (2) Birk "was a new employee and did not have the years of experience with Sears' discount policy that Tkacz had enjoyed;" (3) Birk "had no history of disciplinary problems;" and (4) "there was no evidence presented that she disobeyed a direct order of a supervisor." J.App. at 32. We conclude that the district court did not err in finding that Tkacz and Birk were not similar situated.
 
 
 26
 The most persuasive reason given for the finding that Tkacz and Birk were not similarly situated was Tkacz's rather extensive disciplinary history. Birk had no prior disciplinary problems. During his employment with Sears, Tkacz was counseled, reprimanded or warned on several occasions concerning, among other things, violations of company policy, substandard performances, and a "surly" attitude. Beginning in August 1986, Rini counseled him on no less than fourteen occasions prior to his discharge. Tkacz does not dispute his prior disciplinary history. Tkacz's involvement in the Jones sale could have no doubt been the straw that broke the camel's back. In fact, Rini stated in his affidavit that "Mr. Tkacz's job was in jeopardy because of his performance during the preceding year." J.App. at 66 (Affidavit of Raymond Rini); see also J.App. at 211 (deposition of Raymond Rini). Further, Rini stated that
 
 
 27
 The decision to terminate Mr. Tkacz was made by Fred Brownell and upper management. Mr. Tkacz's poor track record ... was shared with Mr. Brownell prior to Mr. Tkacz's discharge.
 
 
 28
 Id. at 67 (Affidavit of Raymond Rini). In sum, the district court's finding that Tkacz and Birk were not similarly situated is supported by the record.
 
 
 29
 We note, however, that the district court's reliance upon its finding that there was no evidence presented that Birk disobeyed a direct order of a supervisor was in error. In order to make this distinguishing comparison, the district court must have found, directly or by implication, that Tkacz disobeyed a direct order of a supervisor. This finding is based upon Rini's testimony that "he had specifically told Tkacz not to complete it [the sale] as a discounted transaction[.]" J.App. at 30. Tkacz, however, testified that "Rini had at first told him not to proceed with the sale, but later authorized him to proceed with the sale using the employee discount." Id. at 24. Tkacz stated that "during the conversation Rini left the impression that the transaction should proceed at Birk's jeopardy[.]" Id. This would appear to present a genuine issue of material fact. While the discrepancy between the Rini and Tkacz testimonies may not have presented a genuine issue of material fact concerning whether Tkacz actually violated the employee discount policy or concerning whether Sears had cause to discharge Tkacz, the discrepancy did present a genuine issue of material fact concerning whether Tkacz had disobeyed the direct order of a supervisor.
 
 
 30
 In deciding whether to terminate Tkacz, Sears was not bound by the summary judgment standard--viewing the evidence in the light most favorable to the non-moving party. "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." Nix, 738 F.2d at 1187. If Sears chose to accept Rini's version over Tkacz's version, then that is Sears' perogative. The district court, however, stands on different footing. On a motion for summary judgment, the district court is bound to view the evidence in the light most favorable to the non-moving party, Tkacz. In finding that Birk and Tkacz were not similarly situated because Birk had not "disobeyed a direct order of a supervisor" the district court implicitly relied on the finding that Tkacz had "disobeyed a direct order of a supervisor." This the district court was not allowed to do. Such error by the district court, however, was harmless in this case because of all the other differences between the two employees discussed by the District Court.
 
 
 31
 Finally, Tkacz relied upon the disputed conversation between him and Rini to establish a prima facie case. Tkacz contends that the district court unfairly viewed the disputed conversation in the light most favorable to the movant, Sears. As noted directly above, in making the determination of whether Tkacz and Birk were similarly situated, the court did unfairly credit Rini's view of the conversation. However, the disputed conversation itself does not establish a prima facie case for age discrimination. It is not reasonable evidence from which a factfinder can draw an inference of discrimination. The district court was correct when it stated that
 
 
 32
 the Court does not find that the discrepancy between Rini's and Tkacz's version of their conversation creates a material fact which precludes summary judgment. Rini was not responsible for Tkacz's discharge and Brownell based his decision on the facts presented to him, including these differing versions, along with a confirmation by Jones that Tkacz had stated that his supervisor did not approve the transaction.
 
 
 33
 J.App. at 33. Sears was free to credit Rini's version of the facts over Tkacz's version.
 
 
 34
 Even assuming that Tkacz had established a prima facie case, he failed to rebut Sears' legitimate, nondiscriminatory reason for the discharge.
 
 IV.
 
 35
 For the foregoing reasons, we AFFIRM the judgment of the district court.