**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

COSETTE WILKIE,
Plaintiff-Appellee,

v.

BOARD OF COMMISSIONERS OF

CHATHAM COUNTY; BEN SHIVAR; ROD
TIDY, in their official and individual
capacities,
Defendants-Appellants.

No. 95-2803

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
N. Carlton Tilley Jr., District Judge.
(CA-94-463-CV-1)

Argued: September 26, 1996

Decided: March 28, 1997

Before MURNAGHAN and ERVIN, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed in part, dismissed in part, and remanded by unpublished
opinion. Senior Judge Phillips wrote the opinion, in which Judge
Murnaghan and Judge Ervin joined.

_____

**COUNSEL**

**ARGUED:** James Redfern Morgan, Jr., WOMBLE, CARLYLE,
SANDRIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina,

for Appellants. Thomas Keith Black, FORMAN, MARTH, BLACK & ANGLE, P.A., Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PHILLIPS, Senior Circuit Judge:

Following discharge from her position as a police"telecommunicator," Cosette Wilkie brought this action against her employer, the Chatham County (N.C.) Board of Commissioners (the Board), Ron Tidy, her superior, and Ben Shivar, the County Manager, alleging parallel equal protection and sex discrimination claims under 42 U.S.C. § 1983 and 42 U.S.C. § 2000(e) et seq.,"Title VII", respectively, and pendent state law claims of contract and covenant breach. On the defendants' joined motions for summary judgment, the district court dismissed on the merits the Title VII claims against Tidy and Shivar and the pendent state law claims against all defendants, but denied the motions of all defendants for summary judgment on the merits of the § 1983 claims, the motion of the County for judgment on the merits of the Title VII claim, and the motion of Tidy and Shivar for dismissal of the § 1983 claims against them on qualified immunity grounds.

On the ensuing appeals by all defendants, we exercise jurisdiction over only the determination made by the court in denying the motions of Shivar and Tidy for judgment on qualified immunity grounds that on the facts alleged by Wilkie their conduct would have violated her then clearly established constitutional rights. We affirm that determination. Because we lack primary jurisdiction and decline to exercise pendent appellate jurisdiction over any other portion of the court's interlocutory order denying summary judgment, we dismiss the appeals in all other respects, and remand the case for further proceedings.

2

I.

Cosette Wilkie went to work for the County in 1989 as a telecom-
municator, a job that entailed staffing the police radio and telephone,
responding to incoming calls, and dispatching equipment and person-
nel to respond to calls. In November of 1991, she was working the
graveyard shift along with fellow employee Henry Smith. Early in the
morning, Wilkie left her post at the console and went into the
employee break room, leaving Smith at the console. In the minutes
that followed, the call center received a number of radio calls which
were not answered because, having taken a number of antihistamine
pills, Smith was asleep at his post.

This much of the factual background of the unanswered-calls inci-
dent at the center of this litigation is undisputed on the summary judg-
ment record. But, just how and why it occurred is hotly disputed on
that record. Wilkie's version, as reflected in her pleading and support-
ing summary judgment materials, is as follows. When she left the
console to go on a scheduled break, Smith was awake. Later, while
talking with two other officers in the break room, she heard the radio
"pin" signal sound, but did not hear Smith answer the call. She then
asked her fellow officers to use their hand radios to call Smith; when
they did, Smith did not respond. Wilkie then tried to respond to
incoming calls by using the radio in the break room, but it was mal-
functioning. She then began answering telephone calls from the break
room and, having figured out that Smith was asleep, reassured callers
that the situation was in control.

The defendants' version, as reflected in their summary judgment
motion and supporting materials, is radically different. Its central
point was that Wilkie set Smith up to embarrass him. Specifically, the
claim was that Smith, who admitted to having taken a dose of antihis-
tamine pills before starting his shift, had asked Wilkie, and she had
agreed, to take care of the incoming calls for a time while he took a
nap, an arrangement asserted to be in keeping with an unwritten pol-
icy among the late-shift telecommunicators. Wilkie then waited for
Smith to fall asleep, and only then went to the break room and sig-
naled officers then outside on duty to call in so that their calls would
go unanswered while Smith slept. According to Wilkie's version,
however, there was no such unwritten policy of covering each other

3

during partners' naps, she had never napped during her shift, and events occurred as she had asserted.

Because it was undisputed that a number of calls did go unanswered that night, Tidy as county Emergency Operations Director investigated. Having interviewed the principals and other officers both about the napping incident and the alleged napping policy, Tidy charged Wilkie with having violated the county's Personnel Ordinance by intentionally abandoning her post, thereby endangering lives and property, and recommended her discharge. County Manager Shivar accepted the recommendation and discharged Wilkie. On Wilkie's administrative appeal, the Board upheld her discharge.

Smith received only a written reprimand on the basis of the stated conclusions of Tidy and Shivar that Smith's nap was at most negligent, not intentional as was Wilkie's misconduct. No one else who was on the scene received any punishment.

Wilkie then brought this action in federal district court, alleging parallel § 1983 and Title VII equal protection and sex discrimination claims and state-law breach of contract claims against the Board, Tidy, and Shivar. All defendants moved for summary judgment on the merits of all the claims and Tidy and Shivar also sought dismissal of the § 1983 claim on qualified immunity grounds. The district court dismissed the Title VII claim against the individual defendants on the basis that they were not "employers" under the statute and dismissed the pendent state law claims against all defendants on the merits, but denied the Board's motion to dismiss the Title VII claim against it, the motion of all defendants to dismiss the § 1983 claims on the merits, and the motions of Tidy and Shivar to dismiss on qualified immunity grounds the § 1983 claims against them.

The Board, Tidy, and Shivar then jointly noticed appeals from the district court's order denying their respective motions for summary judgment.[1]

_____

[1] Wilkie did not appeal from the dismissals of her Title VII and pendent state-law claims.

4

II.

We first consider the scope of our jurisdiction to review the various parts of the order from which appeals were noticed. As an interlocutory order denying summary judgment, it is not immediately appealable except to the extent it rejects the individual defendants' claims of entitlement to pre-trial dismissal of the § 1983 claims on qualified immunity grounds. Mitchell v. Forsyth, 472 U.S. 511, (1985). And, with respect to that portion of the order, our appellate jurisdiction is further confined to reviewing any "purely legal" determination on which it rests that the facts as alleged by the non-movant and assumed by the court "support a claim of violation of clearly established law." Johnson v. Jones, 115 S. Ct. 2151, 2156 (1995) (quoting Mitchell, 472 U.S. at 528 n.9). Insofar as the order also rests on a "fact-related" determination that genuine issues of material fact respecting the qualified immunity defense preclude summary judgment, that determination is not reviewable on this interlocutory appeal. Johnson,, 115 S. Ct. at 2153, 2156-58; Winfield v. Bass, ___ F.3d ___, ___, No. 94-7346, slip op. at 7, 8 (4th Cir. Jan. 31, 1997) (en banc).

Initially therefore confining our review to the appealable aspects of the court's qualified immunity ruling, we must dismiss the defendants' attempted appeals from all other portions of the order: that is, the denial of the Board's motion to dismiss the Title VII claim on the merits and the motions of all defendants to dismiss the § 1983 claims on the merits. We have no primary jurisdiction over those attempted appeals, and we decline defendants' suggestion that we should exercise pendent appellate jurisdiction over them; the issues are not, as they suggest, inextricably intertwined.

Turning then to the appeals of Tidy and Shivar from denial of their qualified immunity-based motion, we first observe that the denial was rested both on an appealable purely legal determination and an unappealable fact-related determination. See Behrens v. Pelletier, 116 S. Ct. 834, 842 (1996) (pointing out that both determinations may be embodied in such denial orders). First addressing the purely legal issue, the district court properly assumed the truth of the non-movant Wilkie's factual account of the unanswered-call incident as alleged in her pleading and elaborated in discovery materials. Critically, these included the facts that her co-employee Smith, having taken sleep-

5

inducing medication before going on duty, then went to sleep while on duty and while Wilkie, unaware of his medicated condition, was on a scheduled break; that Smith's napping on the job was not by any pre-arrangement with Wilkie pursuant to an unwritten policy for such covering conduct, there being no such policy; that Tidy and Shivar, with knowledge that Smith had deliberately taken sleep-inducing medication before going on duty and as a result had then gone to sleep while alone at the console, nevertheless caused Wilkie to be fired for her conduct in leaving Smith alone at the console but only caused Smith to be reprimanded for his conduct; and that this disparate treatment was motivated by the different genders of the two. JA 188-94.**2** Summing up, the court concluded that Wilkie had

> gone beyond simply articulating a violation at the general level and alleged the infringement of a particularized right . . . . Specifically, [she] alleged that, due to her gender, she was suspended and then discharged while a similarly situated, male co-worker who engaged in misconduct of comparable seriousness received only a reprimand.

JA 196. And, on this basis, the court held that

> Under settled case law, . . . § 1983 afford[s] public employees with [sic] a particularized right to be free from disparate discipline based on certain characteristics, including gender. . . . Thus, a reasonable official would recognize that such action violated clearly established law.

Id.

The court then turned to the further question whether there were genuine issues of material fact respecting the qualified immunity defense and concluded that there were: "there are genuine issues of

---

**2** The court's detailed recitation and assumption of the relevant facts for summary judgment purposes was mainly done in establishing the factual predicates for ruling on the defendants' motions to dismiss the Title VII and § 1983 claims on the merits. But the facts as assumed for that purpose were then clearly the facts expressly assumed by the court in ruling on the qualified immunity defense. See JA 194-96.

6

historical fact respecting [defendants'] conduct, . . . which make summary judgment based on qualified immunity inappropriate" in advance of trial. JA 196.

On the ensuing interlocutory appeals of Tidy and Shivar from the order denying their qualified immunity-based motion, we may, as indicated, review only the district court's purely legal determination and not its fact-related genuine issue determination. See Behrens, 116 S. Ct. at 842 (pointing out that where denial order is based on both determinations, proper procedure is to review legal determination and decline to review fact-related). And, because that purely legal issue is not inextricably intertwined with the fact-related issue but may be addressed independently as an abstract legal question, we decline to exercise pendent appellate jurisdiction to review the genuine-issue determination. See Johnson, 165 S. Ct. at 2159.

III.

Reviewing only the district court's purely legal determination as we have identified it, we affirm that determination.

Our review of denials of summary judgment is de novo, United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992), and in conducting it with respect to this narrow issue, we "take as given" those facts expressly identified by the district court as the predicates for its purely legal ruling and we assume the same "set of facts" in addressing the issue de novo. Johnson, 115 S. Ct. at 2159. Cf. Winfield, ___ F.3d at #6D6D 6D#, slip op. at 16-18 (holding that where district court does not expressly identify the predicate facts for its ruling, court of appeals should undertake independent review of record to identify the proper factual predicate).

Assuming that same set of facts, we agree with the district court that they would show a violation of clearly established constitutional right of which reasonable officials in the positions of the individual defendants would have known. See Anderson v. Creighton, 483 U.S. 635 (1987). As the district court held, the equal protection right of a public employee not to be subjected because of her (or his) gender to more unfavorable discipline than that imposed upon a fellow employee of the opposite gender for misconduct of comparable seri-

7

ousness is and was at the time in issue clearly established as one vindicable by legal action under § 1983. See Moore v. City of Charlotte, 754 F.2d 1100, 1107 (4th Cir. 1985) (recognizing parallel right under Title VII, but reversing for clearly erroneous finding of comparable seriousness); Keller v. Prince George's County , 827 F.2d 952, 956-63 (4th Cir. 1987) (recognizing congruence of public employee rights under equal protection clause and Title VII to be free of gender discrimination). And, as the court further, and properly, concluded, the facts as alleged by Wilkie would, if proven, support a finding of violation of that right.

The defendants challenge that legal conclusion on two principal grounds. We take them in order.

The first contention is that the two conceded acts of misconduct by Wilkie and Smith respectively were not, as a matter of law, of comparable seriousness: Wilkie's involving an intentional act in leaving the console, Smith's being the merely negligent act of falling asleep while at the console. But, as the district court pointed out, when, as was proper, Wilkie's version of the critical facts rather than the defendants' is assumed for purposes of the motion, the acts of misconduct become essentially indistinguishable in culpability. Smith's conduct in intentionally taking sleep-inducing medication before going on duty without advising his graveyard-shift partner or others that to leave him alone at the console might result in its being unattended is at least, if not more, culpable than Wilkie's conduct in intentionally leaving the console to be attended by only one person, but a person then awake and under no known special danger of falling asleep.

The second contention is related: that whatever the true facts of the matter, Tidy and Shivar could not as a matter of law be charged with a knowing violation of Wilkie's clearly established right if they believed, though erroneously, that her misconduct was significantly more serious than Smith's. They are right on the legal principle, see e.g., Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1186 (11th Cir. 1984), but again wrong on its application to the facts as properly assumed by the district court. For, as that court pointed out, it is actually undisputed that the two individual defendants knew that Smith had intentionally taken the medication before going on late-shift duty and had knowingly failed to advise anyone of the spe-

8

cial risk to his ability to attend the console alone that this entailed. JA 192. The district court did not therefore err in concluding that this knowledge undercut the basis upon which the defendants contended that as a matter of law their assessment of the relative culpability of the two was a reasonable one and that they could not therefore be found knowingly to have violated Wilkie's right to non-discriminatory treatment.

IV.

We affirm the district court's determination that on the facts assumed for purposes of the summary judgment motion, the individual defendants' conduct would have violated Wilkie's clearly established right to non-discriminatory treatment of which reasonable officers in their positions would have known. We decline to review the court's fact-related determination in denying the qualified immunity/summary judgment motion that genuine issues of material fact respecting that defense exist and require resolution by trial. We dismiss the appeals of all defendants from all other portions of the district court's order denying summary judgment, and we remand the case to the district court for further proceedings consistent with this opinion.

SO ORDERED

9