[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 29, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-12313
Non-Argument Calendar

_____

D.C. Docket No. 01-03072-CV-GET-1

ROXANN S. BENEFIELD,

Plaintiff-Appellant,

versus

FULTON CO., GA, a political
subdivision of the State of Georgia,
I. DAVID DANIELS, in his official
capacity as Chief of the Fulton Co.
Fire Dept., et al.,

Defendants-Appellees,

_____

Appeal from the United States District Court for the
Northern District of Georgia

_____

**(April 29, 2005)**

Before ANDERSON, BIRCH and BARKETT, Circuit Judges.

PER CURIAM:

Roxann S. Benefield appeals the district court's grant of summary judgment in favor of her employer, Fulton County, in her sexual harassment claim, filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and her retaliation claim, filed pursuant to 42 U.S.C. § 2000e-3. On appeal, Benefield argues that the district court (1) failed to view the evidence in the light most favorable to her, and (2) erred in concluding that no genuine issue of material fact existed on her Title VII claims of sexual harassment and retaliation.[1]

We initially reject Benefield's arguments that the court failed to view the evidence in the light most favorable to her. We also find that no genuine issue of material fact existed on her Title VII claims of sexual harassment and retaliation. Even if we were to conclude that all of the conduct at issue was based on sex and was "sufficiently severe and pervasive," Fulton County was not liable because Fulton County established all the elements necessary to prevail on their affirmative defense pursuant to Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S.Ct. 2275, 2292-93, 141 L.Ed.2d 662 (1998) and Burlington Industries,

---

[1] Benefield also asserted claims against other defendants in the district court, which were dismissed. However, because Benefield has not challenged on appeal these dismissals, we deem any arguments on them abandoned . See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (concluding that "a party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. Otherwise, the issue—even if properly preserved at trial—will be considered abandoned").

Inc. v. Ellerth, 524 U.S. 742, 765, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998).[2]

An employer seeking to assert an affirmative defense pursuant to Faragher and Ellerth must show: (1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. Faragher, 524 U.S. at 807, 118 S.Ct. at 2292-93; Ellerth, 524 U.S. at 765, 118 S.Ct. at 2270. Under the first element of this defense, the employer is responsible for establishing that it "exercised reasonable care to prevent sexual harassment by promulgating an anti-harassment policy." Walton v. Johnson & Johnson Services, Inc., 347 F.3d 1272, 1279 (11th Cir. 2003), cert. denied, 124 S.Ct. 1714 (2004). After the employer is notified of the harassment, "[its] [r]emedial measures should be designed to stop the harassment, correct its effects on the employee, and ensure that the harassment does not recur." Id. at 1288 (quotation omitted). Under the second element of this affirmative defense, the employer must show "that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer, or to otherwise avoid harm."

---

[2] We reach the question of Fulton County's affirmative defense because we conclude that the district court correctly held that Benefield did not suffer an adverse employment action.

3

Id. at 1289. Both elements of this defense must be satisfied. Id.

Here, neither party is contesting that Fulton County had a valid anti-harassment policy. Benefield also conceded that, as part of supervisory training she received after she was promoted to lieutenant, she received training on Fulton County's sexual harassment policy and its complaint procedures. Instead, Benefield is asserting that Fulton County had either actual or constructive knowledge of the harassment at issue before October 2000, when Benefield reported it to R.T. Strong, then Chief of the Fulton County Fire Department, and that it did not exercise reasonable care to prevent the sexual harassment.

Benefield specifically contended that she gave Fulton County notice of the harassment in February or March of 2000, by telling Captain Kenneth Hunter, an officer in the internal affairs department, about Ramsdale's objectionable behavior. Hunter stated that he (1) believed that Benefield was speaking to him as a friend, and (2) did not report what she had told him to anyone else because she asked him not to repeat it. Under Fulton County's anti-harassment policy, an employee is required to report harassment through a written complaint with the Department of Contract Compliance and EEO. Indeed, we have concluded that complaints to persons not authorized to accept complaints does not constitute a reasonable effort to take advantage of an employer's complaint procedures. See

4

id. at 1289 n.15.

Despite Benefield's arguments that Fulton County had constructive notice of the harassment earlier than October 2000, due to rumors within the office, "when an employer has promulgated an effective and comprehensive anti-harassment policy that is aggressively and thoroughly disseminated to its employees"—such as in this case—"an employee's failure to utilize the policy's grievance process will prevent constructive knowledge of such harassment from adhering to the employer." See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1279 (11th Cir. 2002) (internal citation and marks omitted). In addition, although Benefield is arguing that Fulton County failed to promptly correct the harassment by conducting a sufficient investigation, it assigned Benefield a new supervisor immediately upon receiving notice of the harassment. Ramsdale also retired within days of Benefield reporting the harassment, thereby rendering a subsequent investigation of the complaint moot. See Walton, 347 F.3d at 1288 ("where the substantive measures taken by the employer are sufficient to address the harassing behavior, complaints about the process under which those measures are adopted ring hollow").

Finally, to the extent Benefield is arguing that Fulton County failed to show that it met the second element of the defense because she acted reasonably in not

immediately reporting the harassment, this argument also is without merit. Benefield contended in her response to Fulton County's interrogatories that she knew that Angelette Mealing, a former employee of Fulton County, had been subjected to retaliation by having her hours reduced after she had reported harassment but did not file a formal complaint. However, Benefield's discovery response neither contained specific information about Mealing, nor the basis for Benefield's knowledge. Absent a credible threat of retaliation, a plaintiff's subjective fears of reprisal do not excuse her failure to timely report the harassment. See id. at 1290-91. Thus, Benefield did not act reasonably in failing to report the harassment until October 2000.

Accordingly, Benefield failed to show that she suffered severe or pervasive harassment "because of her sex," and Fulton County established that it was not liable for such conduct. The court, therefore, did not err in granting Fulton County summary judgment on Benefield's Title VII claim of sexual harassment.

**Benefield's retaliation claim**

**(a)    Did Benefield suffer an adverse employment action**

To successfully allege a prima facie claim of retaliation under Title VII, a plaintiff must show that "(1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was

6

causally related to the protected expression." <u>Weeks v. Harden Mfg. Corp.</u>, 291 F.3d 1307, 1311 (11th Cir. 2002). To be considered an adverse employment action under Title VII's anti-retaliation provision, the action "must either be an ultimate employment decision or else must 'meet some threshold level of substantiality." <u>Stavropoulos v. Firestone</u>, 361 F.3d 610, 616-17 (11th Cir. 2004) (citation omitted). Ultimate employment decisions include decisions such as termination, failure to hire, or demotion. <u>Id.</u> at 617.

The conduct Benefield complained of included: (1) discontinuing her use of a take-home car, (2) taking away her pager, (3) transferring her staff and taking away her responsibilities as EMS Coordinator, (4) denying her reimbursement for business-related cell phone calls, (5) denying her reimbursement for a work-related conference, (6) transferring her from the headquarters office to a fire station, (7) not giving her light duty after she re-injured her shoulder while moving during the transfer, (8) delaying her reclassification to captain, and (9) failing to immediately reimburse her for out-of-class pay. None of these actions, however, constituted an ultimate employment action because Benefield neither lost her job, nor suffered a lessening of pay, position, or benefits. Thus, we first must determine whether the conduct met "some threshold level of substantiality." <u>See</u> <u>Stavroupolis</u>, 361 F.3d at 616-17.

7

In determining "substantiality," "not everything that makes an employees unhappy is an actionable adverse action." Id. at 618 (citing Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1118 (11th Cir. 2001)). An adverse employment action, instead, involves conduct that "alters an employee's compensation, terms, conditions, or privileges of employment." Id.; see also Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001) (holding that changes in "the terms, conditions, or privileges of employment" must be "serious and material"). Whether or not an action constitutes an adverse employment action for purposes of a retaliation claim must be determined on a case-by-case basis, using both a subjective and an objective standard. Gupta v. Florida Bd. of Regents, 212 F.3d 571 (11th Cir. 2000).

To the extent Benefield is asserting that her lateral transfer to a fire station, the removal of her duties and staff as an EMS Coordinator, and Fulton County's failure to give her light work when he re-injured her shoulder constituted "adverse employment actions," these actions constituted changes in work assignments, instead of adverse employment actions. Indeed, we determined in Gupta that a university's refusal to give a professor desired work assignments, at desired hours and locations, did not constitute an adverse employment action. See id. at 587-89.

Because Benefield failed to show that the transfer resulted in a change in

8

her rank or compensation, her transfer also did not constitute an adverse employment action. Furthermore, to the extent Benefield complained of losing her right to a "take-home car," the record reflected that, under county policy, whether a county-issued car could be taken home was based on how many times an employee was recalled for service, and that Benefield rarely was called to work while she was off duty. Moreover, although Fulton County took away Benefield's cell phone and pager on her transfer, Benefield conceded that she only was issued these items to carry out her duties as EMS Coordinator. Benefield contended that Fulton County failed to reimburse her for business phone calls she made on her personal cell phone and for a work-related conference, but she failed to show that such expenses had been authorized. Indeed, Fulton County offered testimony that, if Benefield had sought reimbursement for phone calls, she would have had to submit a request to the County; and Benefield attended the conference in question knowing that her request for permission to attend the conference had been denied.

Although Benefield also complained that Fulton County delayed her reclassification to captain, she conceded that this reclassification occurred in September 2002, after she returned to work. In addition, Fire Chief David Daniels testified that, if Fulton County determined, under its policy on "out of class" pay,

9

that Benefield was entitled to pay during the intervening time, she would be paid fully. Thus, Benefield failed to allege successfully a prima facie claim of Title VII retaliation. See Weeks, 291 F.3d at 1311.

**(b) Did Benefield establish that Fulton County's reasons for its conduct were pretextual**

Even if we were to conclude that some or all of the actions alleged by Benefield constituted adverse employment actions, and that there was a causal connection between Benefield's complaint of harassment and the adverse actions, the district court did not err in determining that Fulton County's non-discriminatory reasons behind these acts were not pretextual. See Admiral Ins. Co. v. Cresent Hills Apartments, 328 F.3d 1310, 1312 (11th Cir. 2003) (holding that we "may affirm a district court's decision [to grant summary judgment] on any adequate ground, even if it is other than the one on which the court actually relied"). Once the plaintiff successfully alleges a prima facie case of retaliation, "the burden shifts to the defendant to rebut the presumption by producing legitimate reasons for the adverse employment action." See Gupta, 212 F.3d at 590.

Here, as discussed above, Fulton County explained that Benefield's use of a "take-home" car was discontinued because Benefield rarely was called to work

10

while she was off duty. Moreover, Fulton County stated that (1) Benefield had failed to show that she sought and was denied reimbursements for phone calls, and (2) she was specifically not authorized to attend the conference for which she was denied reimbursement. Benefield's cell phone and pager were taken because, as Benefield conceded, line firefighters had no need for them. Chief Daniels testified that his reasons for Benefield's transfer and the removal of her duties as EMS Coordinator, included that (1) he did not want lieutenants giving orders to higher ranking personnel or in mid-level decision-making positions, and (2) Benefield's position as EMS Coordinator, which was a working title only, was not funded.

Moreover, Chief Daniels explained that reclassification takes six months, and that other employees who were on leave during the reclassification also were not reclassified until their return. Chief Daniels explained that Benefield was not assigned light duty after she re-injured her shoulder because it was his policy to offer light duty only to employees who were injured on the job. Finally, Chief Daniels testified that delays in determining whether Benefield qualified for this pay were attributable to the fact that the reclassification system had been "messed up for years," and that, if Fulton County determined that Benefield was eligible for this pay, she would be paid fully.

Benefield, on the other hand, produced insufficient evidence on which a

11

reasonable fact finder could conclude that Fulton County's proffered reasons were pretextual. Benefield cited to her attestations in her affidavit that, (1) when Deputy Chief Jerry Whitehead notified her about the lateral transfer, he had on his desk a newspaper with news that Ramsdale had been denied another position, and (2) Whitehead and Chief Daniels were friends. At a minimum, however, a plaintiff must establish that "the employer was actually aware of the protected expression at the time it took adverse employment action." See Clover v. Total System Services, Inc., 176 F.3d 1346, 1354 (11th Cir. 1999); see also Brungart v. BellSouth Telecommunications, Inc., 231 F.3d 791, 799 (11th Cir. 2000) (stating that a decision-maker cannot have been motivated to retaliate by something unknown to him). Because Benefield's evidence did not establish such awareness by Chief Daniels, the actual decision-maker, the court did not err in concluding that Chief Daniels' proffered reasons for the transfer were not pretextual.

Similarly, even though Fulton County had other employees take over the responsibilities of EMS Coordinator after transferring Benefield, these employees did not hold the title of EMS Coordinator. Moreover, minutes from a Fulton County meeting reflect that Whitehead was seeking a captain/paramedic to fill the position of EMS Coordinator. Thus, the court also did not err in concluding that Chief Daniels' reasons for taking away Benefield's responsibilities as EMS

12

Coordinator were not pretextual.

Furthermore, to the extent that Benefield is contending that Chief Daniels' reasons for not giving her light duty were pretextual because the policy should have been construed in her favor, "Title VII does not take away an employer's right to interpret its rules as its chooses, and to make determinations as it sees fit under those rules." See Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984). Although Benefield asserts that Chief Daniels reasons for the delay in reclassification was pretextual, she failed to produce evidence showing that other employees who had not filed a complaint and had been on leave did not suffer a similar delay. Indeed, Fulton County produced evidence showing that two other lieutenants on leave during the same period as Benefield were not reclassified until after they returned to work. Thus, the court also did not err in concluding that no genuine issues of material fact existed as to Benefield's retaliation claim.

Accordingly, we conclude that the district court did not err in granting Fulton County summary judgment on Benefield's Title VII claims of sexual harassment and retaliation. We, therefore, affirm.

**AFFIRMED**.[3]

---

[3] We also reject Benefield's request for attorneys' fees based on the district court's order that the County should pay Benefield her back pay because the court's determination that the amount was owing was not based on its determination that Benefield had been retaliated against by the County.

13