**Lonnie GIVHAN, Plaintiff,**

v.

**ELECTRONIC ENGINEERS, INC., Defendant.**

**No. Civ.A. 97–D–722–N.**

United States District Court, M.D. Alabama, Northern Division.

Feb. 11, 1998.

Gwendolyn T. Kennedy, Montgomery, AL, for Plaintiff.

Frances Heidt, Fern Singer, Birmingham, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant Electronic Engineers, Inc.'s ("EE") Motion For Summary Judgment ("Def.'s Mot.") filed December 16, 1997. On the same date, EE filed its Memorandum Of Law In Support Of Its Motion For Summary Judgment ("Def.'s Mem.") and its Submission Of Evidence In Support Of Motion For Summary Judgment ("Def.'s Evid."). Plaintiff Lonnie Givhan ("Givhan") filed his Opposition To Motion For Summary Judgment on January 5, 1998 consisting solely of his Affidavit ("Givhan Aff."), the Affidavit of Michael Carter ("Carter Aff."), and the Affidavit of Michael J. Sulkosky ("Sulkosky Aff."). On January 20, 1998. EE filed its Reply Memorandum Of Law In Support Of Motion For Summary Judgment ("Def.'s Reply"), as well as a Motion To Strike Portions Of the Affidavits Of Michael J. Sulkosky and Michael Carter ("Def.'s Mot. To Strike"). On January 21, 1998, the court issued an Order directing Plaintiff to show cause, if any there be, no later than February 4, 1998, why EE's Motion To Strike should not be granted. Plain-

tiff did not respond to the court's January 21, 1998 Order.

For the reasons set forth below, the court finds that EE's Motion To Strike is due to be granted in part and denied in part, and that EE's Motion For Summary Judgment is due to be granted.

## JURISDICTION

The court properly exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 2000, *et seq.* The parties do not contest personal jurisdiction or venue.

## DISCUSSION

### I. MOTION TO STRIKE

 An affidavit which fails to meet the standards of Rule 56(e) of the Federal Rules of Civil Procedure is subject to a motion to strike. *Southern Concrete Co. v. United States Steel Corp.,* 394 F.Supp. 362, 380 (N.D.Ga.1975), *aff'd,* 535 F.2d 313 (5th Cir. 1976).[1] The motion to strike should state precisely the portions of the affidavit to which objection is being made, and the grounds therefor. *Id.; Olympic Ins. Co. v. H.D. Harrison. Inc.,* 418 F.2d 669, 670 (5th Cir.1969). If no objection is made to inadmissible statements in an affidavit then the court may consider them on a motion for summary judgment. *Harrison,* 418 F.2d at 670; *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639 (2d Cir.1988).

 Both Sulkosky's and Carter's Affidavits were filed in support of Plaintiff's opposition to EE's motion for summary judgment, and as such, must comport with the require-

ments of the Federal Rules of Civil Procedure. Rule 56(e) of the Federal Rules of Civil Procedure provides that an affidavit opposing a motion for summary judgment "shall be made on *personal knowledge,* shall set forth such facts as would be *admissible in evidence,* and shall show affirmatively that the affiant is competent to testify to the matters stated therein." (emphasis added). Because affidavits proffered in opposition to a motion for summary judgment must be based upon personal knowledge, an affidavit based upon "information and belief" is insufficient as a matter of law. *Automatic Radio Mfg. Co. v. Hazeltine Research,* 339 U.S. 827, 831, 70 S.Ct. 894, 94 L.Ed. 1312 (1950); *Reeves v. Thigpen,* 879 F.Supp. 1153, 1164 (M.D.Ala.1995).

 Further, the court may consider only that evidence that would be admissible at trial.[2] *Soles v. Board of Comm'rs of Johnson County,* 746 F.Supp. 106, 110 (S.D.Ga. 1990) (citing *Sires v. Luke,* 544 F.Supp. 1155 (S.D.Ga.1982); *Samuels v. Doctors Hosp., Inc.,* 588 F.2d 485, 486 n. 2 (5th Cir.1979)). In determining admissibility under Rule 56, the same standards apply as at trial. *Soles,* 746 F.Supp. at 110 (citing *Munoz v. International Alliance of Theatrical Stage Employees,* 563 F.2d 205, 207 n. 1 (5th Cir.1977)). Thus, in ruling upon summary judgment motions, the court will not consider inadmissible hearsay.[3] *Soles,* 746 F.Supp. at 110 (citation omitted).

 EE's Motion To Strike is directed at portions of the Affidavits of Michael J. Sulkosky and Michael Carter that were submitted by Givhan in opposition to EE's Motion For Summary Judgment. EE contends that certain portions of Sulkosky's Affidavit are

---

1. Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

2. Even if an affidavit does contain some inadmissible material, the court is not required to strike the entire affidavit. *Southern Concrete Co. v. United States Steel Corp.,* 394 F.Supp. 362, 380 (N.D.Ga.1975), *aff'd,* 535 F.2d 313 (5th Cir.1976) (citations omitted). The court may strike or disregard the inadmissible portions and consider the rest of the affidavit. *Id., Lee v. National Life*

*Assurance Co.,* 632 F.2d 524, 529 (5th Cir.1980) (citations omitted).

3. "[I]t is the policy of [R]ule 56(e) to allow the affidavit to contain evidentiary matter, which if the affiant were in court and testified on the witness stand, would be admissible as part of his testimony." *American Securit Co. v. Hamilton Glass Co.,* 254 F.2d 889, 893 (7th Cir.1958); *see also H. Sand & Co. v. Airtemp Corp.,* 934 F.2d 450, 454–55 (2d Cir.1991). Thus, hearsay statements that would be admissible at the trial as exceptions to the hearsay rule may be contained in the affidavit. *Airtemp,* 934 F.2d at 454–55.

based on inadmissible hearsay. Specifically, EE asserts that the following should be stricken:

> During my supervisor tenure at [EE] from April 1993, until November 1996, I witnessed several racist remarks.
>
> . . .
>
> Richard Tarentino called a meeting with Larry Eckels and myself and said "Ya'll need to fire that nigger."
>
> . . .
>
> Additionally, Terrie Taylor, Office Manager would from time to time "spread hate" about blacks, calling Lonnie, in particular, a "sorry nigger."

(Sulkosky Aff. at 1–2.)

EE does not offer any argument or case law in support of its Motion To Strike other than the assertion that the statements quoted above are "inadmissible hearsay" under Rules 801. (Def.'s Mot. To Strike at 1–2.) Rule 801(c) of the Federal Rules of Evidence defines hearsay as "a statement . . . offered in evidence to prove the truth of the matter asserted." Although Sulkosky's Affidavit clearly recounts statements he allegedly heard others make, the statements are not offered to prove the truth of the matters asserted therein, but only to prove that the statements were made. Therefore, they do not meet Rule 801's definition of hearsay, and are thus not subject to exclusion under Rule 802. Accordingly, the court finds that EE's Motion To Strike the portions of Michael J. Sulkosky's Affidavit quoted above is due to be denied.

■ Next, EE contends that certain portions of Carter's Affidavit "contain statements without the personal knowledge of the affiant." (Def.'s Mot. To Strike at 2.) Specifically, EE asserts that the following should be stricken:

> In December 1995, my van's (# 19) motor locked up due to old age and excessive use. The van had over 128,000 miles on it. I checked the oil every gas fill up, as I'm sure Lonnie did for van # 26 which was older than mine. I was not fired over the incident, but I was talked to about it. I left [EE] on November 7, 1996 because I

was fed up over poor management decisions that had no rhyme or reason.

(Carter Aff. at 1). Mr. Carter asserts that he checked the oil every gas fill up and that "I'm sure Lonnie did." *Id.* He does not, however, describe his basis of knowledge for this assertion. Indeed, he does not contend that he saw Plaintiff check the oil or any other grounds for his "certainty" that could be construed as being based on personal knowledge. Accordingly, the proffered statement is made without the personal knowledge of the affiant and does not meet the requirements of Rule 56(e). Therefore, the court finds that EE's Motion To Strike the portion of Michael Carter's Affidavit that states that "I'm sure Lonnie did" is due to be granted.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is ne genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,' " that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; see also *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

### B. Background And Factual Summary

Although Plaintiff's Complaint is poorly pled, it appears to allege the following: (1) a violation of 42 U.S.C. § 1981 (Pl.'s Compl. ¶ 1); (2) a violation of 42 U.S.C. § 1983 (*Id.*); (3) a claim of wrongful discharge under Title VII of the Civil Rights Act of 1964 (*Id.* ¶ 6); and (4) a claim of discrimination in his terms and conditions of employment in violation of Title VII (*Id.* ¶ 7.) Plaintiff requests: (1) "a Declaratory Judgment that the actions of the defendant violate the rights of Plaintiff guaranteed by Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000–e et seq., and the due process and equal protection clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States." (*Id.,* at 2, ¶ 1); (2) costs and attorney's fees "as provided by ¶ 706(k) of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000–e 5(k)" (*Id.* at 3, ¶ 2); and (3) "further relief, including punitive damages, as may be necessary and proper, including, the hiring of the plaintiff, [and] an award of back pay from June 17, 1996, to the end of this suit." (*Id.* at 3, ¶ 3.) Defendant denies any wrongful conduct and accordingly denies that Plaintiff is entitled to any of his requested relief. (*See generally,* Def.'s Answer.)

Plaintiff's factual allegations, gleaned from his Complaint and from those portions of the Affidavits submitted in Opposition to EE's Motion For Summary Judgment are meager. What follows, therefore, are the court's findings of fact which rely mostly on Defendant's pleadings, given the aforementioned paucity of Plaintiff's submissions.

Plaintiff was initially employed by EE in June of 1986, and was fired in June of 1988 for poor performance, using a company telephone to make personal long distance telephone calls after being warned on prior occasions, and for having alcoholic beverages in his company truck. In November of 1990, Plaintiff was rehired as a technician after EE "heard from Plaintiff's preacher ... and because Plaintiff said he was more responsible." (Def.'s Mem. ¶ 3.) From 1994 to 1996, Plaintiff's performance "did not improve significantly," (Def.'s Evid., Gassenheimer Decl. ¶ 6), and he received three written warnings regarding his work performance that were related to his "failure to follow instructions and violation of company policies." (*Id.* ¶ 4.) During his employment, Plaintiff was also "taken off jobs assigned by EE because of complaints from customers." (*Id.* ¶ 15; Def.'s Mem. ¶ 5.) On June 16, 1996, Plaintiff's company truck "was rendered completely inoperable because it had no oil. Plaintiff was

responsible for ensuring the company truck had sufficient oil." (Def.'s Mem. ¶ 6.) Plaintiff was then terminated.

EE argues that Plaintiff was fired "due to the warnings he received, the fact that he was not responsive to clients regarding service calls and for failure to properly maintain his company van." (Def.'s Evid., Gassenheimer Decl. ¶ 7; *see also* Def.'s Mem. ¶ 7.) Plaintiff contends that he was "discriminated against by the defendant in his discharge in that the white employees who had car trouble and who had minor write-ups were not disciplined or reprimanded and were not discharged." (Pl.'s Compl. ¶ 6.) As for Plaintiff's allegation of discrimination in his terms and conditions of employment, Plaintiff specifically alleges the following:

(1) "That Plaintiff was not allowed to work on sizable jobs that would yield recognition and promotion, while white employees with less seniority, skill, and experience were given the larger jobs" (Pl.'s Compl ¶ 7(a));

(2) "That black employees, including Plaintiff, were not allowed to travel to out-of town jobs, while white employees with less skill, experience and ability were allowed to do so" (*Id.* ¶ 7(b));

(3) "That black employees, including Plaintiff, were not allowed to participate in training programs that were geared toward promotion, while white employees with less skill, experience and ability were allowed to do so" (*Id.* ¶ 7(c));

(4) "That black employees, including Plaintiff, were not allowed to share in or receive any bonus pay for jobs well done, while whites received such pay for less work" (*Id.* ¶ 7(d)). Plaintiff also contends in his Affidavit that he "was not allowed to receive selection for the larger and more prestigious jobs, despite my good work. I was denied bonus pay though I had earned it, while white employees with fewer skills were given benefits, bonus, and opportunity for advancement. I was terminated allegedly due to the company truck failure [sic] to operate. White employees who had engine malfunction were not disciplined." (Givhan Aff.)

## C. Analysis

■ In this action, Plaintiff seeks redress via 42 U.S.C. § 1981, 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964. As an initial matter, the court notes that § 1983 creates a mechanism for recovering monetary damages and injunctive relief from governmental actors and entities whose actions under color of state or local law deprive a plaintiff of rights, privileges or immunities secured by the United States Constitution or federal statutes.[4] Thus, § 1983 " 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (citations omitted). Plaintiff has not shown that EE acted under color of state law, as required by § 1983. *See, e.g. Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Accordingly, the court finds that summary judgments in favor of EE is due to be granted on Plaintiff's § 1983 claim.

■ Section 1981 prohibits race discrimination in the making and enforcing of contracts and is a statutory remedy available in both the public and private sectors.[5] *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The allocation of burdens and elements of a prima facie case are the same for employment claims stemming from Title VII and § 1981. *See Richardson v. Leeds Police Dept.,* 71 F.3d 801, 805 (11th Cir. 1995); *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1060 (11th Cir.1994); *Howard v.*

---

**4.** 42 U.S.C. § 1983 provides in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

**5.** 42 U.S.C. § 1981 provides in relevant part: "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts as is enjoyed by white citizens."

*BP Oil Co., Inc.*, 32 F.3d 520 (11th Cir.1994). Accordingly, the court will utilize the familiar *McDonnell Douglas / Burdine* paradigm in analyzing Plaintiff's claims. *See Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ The critical element in establishing wrongful discrimination in violation of Title VII or § 1981 is discriminatory intent. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) (Title VII); *General Bldg. Contractors Ass'n., Inc. v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (§ 1981); *Washington v. Davis*, 426 U.S. 229, 246–48, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (§ 1981); *Baldwin v. Birmingham Bd. of Educ.*, 648 F.2d 950, 954 (5th Cir.1981) (§ 1981). Discriminatory intent can be established through either direct or circumstantial evidence. *United States Postal Serv. Bd. of Gov. v. Aikens*, 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). Direct evidence of discriminatory intent may be evidenced, for example, by "statements indicating racial bias on the part of a decision maker in an employment setting," *Trotter v. Board of Trustees of Univ. of Alabama*, 91 F.3d 1449 (11th Cir.1996) (citing *Haynes v. W.C. Caye & Co., Inc.*, 52 F.3d 928, 931 (11th Cir.1995)), " 'statement[s] that members of a [protected class] in general ... are simply not competent enough to do a particular job,' " *Trotter*, 91 F.3d at 1453 (quoting *Haynes*, 52 F.3d at 931; *Bell v. Birmingham Linen Service*, 715 F.2d 1552, 1556 (11th Cir.1983), *cert. denied*, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984)), or other "actions or remarks of the employer reflecting a discriminatory attitude." *Williams v. Mead Coated Bd., Inc.*, 836 F.Supp. 1552, 1569–70 (M.D.Ala.1993), *aff'd.* 41 F.3d 668

(11th Cir.1994). "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact [in issue] without inference or presumption." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990). "For statements of discriminatory intent to constitute direct evidence of discrimination, they must be made by a person involved in the challenged decision." *Trotter*, 91 F.3d at 1454–54.

When there is direct evidence that discrimination was a motivating factor, "the ultimate issue of discrimination is proved," *Haynes*, 52 F.3d at 931 (*citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)); *see also Trotter*, 91 F.3d at 1453, and the analysis employed thus differs from cases where only circumstantial evidence is available. *Trotter*, 91 F.3d at 1453 (*citing Bell*, 715 F.2d at 1556.) If and when a plaintiff presents direct evidence of discriminatory intent, " 'it is then left to the defendant to prove by a preponderance of the evidence that the same employment decision would have been reached even absent discriminatory intent.' " *Id.* (*quoting Price Waterhouse*, 490 U.S. at 244–45, 109 S.Ct. 1775).

In this action, however, Plaintiff does not point to any evidence that could be construed as "direct" evidence of discriminatory intent. Indeed, as noted, Plaintiff fails to "point" to any evidence at all in support of his allegations, and chooses, instead, to rest solely on the three Affidavits noted above. Additionally, all of Defendants arguments are framed in terms of a circumstantial case. (*See, e.g.,* Def.'s Mem. at 4) ("[i]n this case there is no direct evidence of discrimination.") Based on the Parties positions (or the lack thereof), as well as a thorough and independent review of the record, the court finds no direct evidence of discriminatory intent, and accordingly turns to an analysis of whether Plaintiff can establish a circumstantial case under *McDonnell Douglas* and *Burdine*.[6]

---

**6.** To the extent Plaintiff may have intended his proffered Affidavits to offer direct evidence of discriminatory intent, the court rejects them as such. First, although Michael Sulkosky alleges that he heard various racist remarks, Plaintiff has not shown that any of these remarks were made by the decision-maker responsible for his

discharge, or any other nexus between the alleged statements and Plaintiff's discharge. Additionally, assuming *arguendo* that Plaintiff has established a prima facie case based on direct evidence, the court finds that, for the reasons articulated *infra* in discussing Plaintiff's circumstantial evidence case, Defendant has established

Under this framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *Combs v. Plantation Patterns,* 106 F.3d 1519 (11th Cir.1997) (citations omitted). If the plaintiff meets this burden, he or she is entitled to a legal presumption that the defendant(s) acted with discriminatory intent. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089; *McDonnell Douglas,* 411 U.S. at 792. The effect of this presumption is to shift to the employer the burden of producing a legitimate, nondiscriminatory reason for the challenged employment action. *Combs,* 106 F.3d at 1528 (citations omitted). This intermediate burden is "exceedingly light." *Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1142 (11th Cir.1983); *see also Turnes,* 36 F.3d at 1061. "The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Combs,* 106 F.3d at 1528 (quoting *Burdine,* 450 U.S. at 254–55, 101 S.Ct. 1089). The employer need only produce "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* (quoting *Burdine,* 450 U.S. at 257, 101 S.Ct. 1089).

If the employer satisfies this burden, the presumption of discrimination disappears from the case and the plaintiff must persuade the trier of fact that the employer's real reason for the adverse employment decision was, in fact, discriminatory. *Burdine,* 450 U.S. at 253, 256, 101 S.Ct. 1089. "[T]he plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs,* 106 F.3d at 1528 (citations omitted). This may be accomplished by "either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's

proffered explanation is unworthy of credence." *Id.* at 1528.

■ Plaintiff alleges discriminatory discharge and discrimination in the terms and conditions of employment. To establish a prima facie case of discriminatory discharge, Plaintiff must show: (1) that he is a member of a protected class; (2) that he was qualified for the job from which he was discharged; (3) that he was discharged; and (4) that his former position was filled by someone not in the protected class. *See Edwards v. Wallace Community College,* 49 F.3d 1517, 1521 (11th Cir.1995); *Jones v. Lumberjack Meats, Inc.,* 680 F.2d 98, 101 (11th Cir.1982). Plaintiff may also establish the fourth requirement by showing that he was terminated while others having comparable or lesser qualifications and not in his protected class were retained, or that he suffered from differential application of work or disciplinary rules. *See, e.g., Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515 (11th Cir.1991) (superseded by statute on other grounds); *Moore v. State of Alabama,* 989 F.Supp. 1412 (M.D.Ala.1997). This standard is not a new one; both the Supreme Court and the Eleventh Circuit have consistently held that plaintiffs with wrongful termination claims establish a prima facie case upon proof that they were treated differently than similarly situated non-minority employees. *See, e.g., McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 280–85, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Pearson v. Macon–Bibb County Hosp. Auth.,* 952 F.2d 1274, 1280 (11th Cir.1992); *Hawkins,* 883 F.2d at 984 ("If disciplinary rules are applied discriminatorily, it is unnecessary to show that plaintiff was replaced by a nonminority") (citations omitted).

■ It is undisputed that Plaintiff is a member of a protected class, that he was qualified for the job he was discharged from, and that he was discharged. Accordingly, the court will assume, without deciding, that Plaintiff has met the first three prongs of a prima facie case. To meet the fourth prong, however, Plaintiff must establish that he was replaced by someone outside of the protected

by a preponderance of the evidence that it would have taken the same action even absent any

discriminatory intent. *See Trotter,* 91 F.3d at 1453.

class, that he was terminated while others having comparable or lesser qualifications and not in his protected class were retained, or that he was subject to different application of work or disciplinary rules. Plaintiff offers no evidence that he was replaced by someone outside of the protected class or that he was terminated while others having comparable or lesser qualifications and not in his protected class were retained.[7] As for a different application of work or disciplinary rules, Plaintiff alleges that "white employees who had car trouble and who had minor write-ups were not disciplined or reprimanded and were not discharged." (Compl.¶ 6.) Further, in his Affidavit, Plaintiff contends that "I was terminated due to the company truck failure [sic] to operate. White employees who had engine malfunction were not disciplined." (Pl.'s Opp'n, Givhan Aff.) Plaintiff offers no evidentiary support whatsoever for these allegations. In other words, in the face of EE's Motion For Summary Judgment, and the evidence offered in support thereof, Plaintiff has failed to "go beyond the pleadings and by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate *'specific facts* showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (emphasis added); *see also* Fed.R.Civ.P. 56(e). Accordingly, the court finds that Plaintiff has failed to establish a prima facie case of discriminatory discharge.

■ Additionally, assuming *arguendo* that Plaintiff has established a prima facie case of discriminatory discharge, the court finds that Plaintiff has failed to adequately rebut EE's proffered legitimate, non-discriminatory reason for Plaintiff's discharge, and has not raised a genuine issue for trial. EE has presented evidence showing that since Plaintiff's discharge, three Technicians have been hired for EE's Montgomery office; one is white and two are black. (Def.'s Mem. at 7.) White employees have been warned, disci-

plined and discharged for various violations of company policy or poor work performance. (*Id.*) And, Plaintiff received reprimands in November, 1994, November 1995, and June 1996 and was finally discharged on June 17, 1996 for "willful damage to material/equipment" and "working on personal matters." (Def.'s Evid., Ex. C., Def.'s Ex. 11). At the time of Plaintiff's discharge, no other Technician, other than the Plaintiff, had allowed a company truck to run without oil. (Def.'s Evid., Ex. A. ¶ 12.) Irving Gassenheimer, Jr., President and Owner of EE states that "[t]here is not one single occasion during the existence of this company where a truck was rendered completely inoperable and not able to be repaired due to a technician's failure to maintain his truck properly." (*Id.*) Plaintiff has not identified a single worker who could or should have been terminated instead of him, and has not pointed to any other workers with a performance record similar to his who were retained. In fact, Plaintiff has failed to offer any specific evidence to rebut this statement, or any of EE's proffered reasons for Plaintiff's discharge, except for the unsubstantiated assertions in his Affidavit. The court finds this lack of specific evidence fatal, *see* Fed.R.Civ.P. 56(e); *Ratliff v. DeKalb County,* 62 F.3d 338, 341 (11th Cir.1995), and finds that Plaintiff has failed to rebut EE's legitimate, non-discriminatory reason for Plaintiff's discharge and raise a genuine issue for trial. Plaintiff's discriminatory discharge claim thus fails on this ground as well.

■ As for Plaintiff's claim of discrimination in the terms and conditions of his employment, his allegations can be divided into essentially two categories: (1) failure to provide equal training and work opportunities that could lead to advancement; and (2) disparate bonus pay distribution. (*See* Compl. ¶ 7; Pl.'s Opp'n, Givhan Aff.) To establish a prima facie case of disparate treatment based on conditions of employment un-

---

7. Plaintiff only contends that he was discharged; his pleadings are silent as to his replacement. EE has presented evidence showing that one white and two blacks were hired as Technicians in EE's Montgomery office after Plaintiff's discharge. (Def.'s Mem. at 7.) Although EE's evidence doesn't necessarily establish that Plaintiff's

specific position was *not* filled by someone outside of the protected class, as explained above, the initial burden of *establishing* a prima facie case is on the *plaintiff*. The defendant need not offer evidence to rebut plaintiff's allegations *until* plaintiff has met his or her burden of establishing a prima facie case.

der Title VII, Plaintiff is required to show that: (1) he belongs to a protected class; and (2) he was similarly situated to a person who was not a member of the protected class; but (3) did not receive a condition of employment provided to that person. *See Mitchell v. Carrier Corp.,* 954 F.Supp. 1568 (M.D.Ga. 1995) (citing *Thompkins v. Morris Brown College,* 752 F.2d 558, 562 n. 7 (11th Cir. 1985)); Cf. *Lewis v. Zilog, Inc.,* 908 F.Supp. 931 (N.D.Ga.1995).

It is uncontested that Plaintiff is a member of a protected class. But, Plaintiff has failed to offer any evidence, other than general conclusory allegations, that he was treated differently than similarly situated employees not in the protected class. In the face of EE's Motion For Summary Judgment, Plaintiff has failed to adduce evidence of *specific* similarly situated employees outside of the protected class that were treated differently in terms of work and/or training opportunities that could lead to advancement. Plaintiff has also failed to cite any *specific* evidence in support of his disparate bonus pay distribution claim. As noted earlier, Plaintiff cannot rest on the allegations in his Complaint or on general allegations in his Affidavit. Accordingly, for this reason alone, the court finds that EE's Motion For Summary Judgment is due to be granted.

In addition, and in the alternative, EE is also entitled to summary judgment based on the factual record before the court. Plaintiff contends that he was not allowed to work sizable jobs that would yield recognition and promotion, travel to out-of-town jobs, or participate in training programs that were geared toward promotion, while white employees with less skill, ability, and experience were allowed to do so. Plaintiff also alleges that he was denied bonus pay that white employees enjoyed. In response to these general allegations, EE offered the Declaration of Irvin Gassenheimer, Jr., the Owner and President of EE, who stated:

13. As President of [EE], I approve all recommendations that a specific Technician be allowed to attend training with a certain company or for a certain product. Only Technicians who have performed consistently well are considered for training by outside companies.

14. All final decisions regarding training are made by me and are based on the performance of the individual Technician.

15. On more than one occasion, I was asked by a client of [EE's] to remove [Plaintiff] from a project. . . .

16. At [EE], recognition does not come to Technicians on the basis of how large the job is or how long they have been employed. Rather, recognition and promotions are awarded to those Technicians who do quality work, are capable of bringing a project under budget and have positive working relationships with customers.

17. Bonuses for Technicians at [EE] are based on the ability of the employee to complete a project under budget and on schedule.

18. In the years 1993 and 1994, four Technicians received bonuses because of their ability to complete a job efficiently and under budget.

(Def.'s Evid., Ex. A., Gassenheimer Decl., ¶¶ 13–18.) Plaintiff does not dispute these statements in any way, or offer any evidence to challenge either the stated criteria, their application to him specifically, or toward EE employees in general. EE also offered evidence showing that a white Technician who attended training schools, traveled out of town, and worked on large jobs for EE did not get promoted. (Def.'s Mem. at 10–11.) Assuming Plaintiff could get by the hurdle of establishing a prima facie case, EE has proffered specific evidence establishing legitimate, non-discriminatory reasons for it employment decisions, which Plaintiff has failed to rebut.

Michael Carter's Affidavit, which was substantially struck above, offers no relevant evidence in support of Plaintiff's claims. The fact that he left EE in 1996 "because I was fed up over poor management decisions that had no rhyme or reason" (Carter Aff.) is unsubstantiated by any evidentiary support, and does not appear to be relevant to any of Plaintiff's claims. The fact that he left his employment with EE because he was "fed up" with decisions that "had no rhyme or reason" does not establish or go toward es-

tablishing that Plaintiff was subject to unlawful discrimination.

Michael J. Sulkosky's Affidavit offers what appears at first glance to be more compelling evidence in support of Plaintiff's claims. Sulkosky, who was Plaintiff's supervisor from 1993 to 1995 and who was a supervisor generally at EE from 1993 to 1996 claims to have "witnessed several racist remarks." (Sulkosky Aff.) This allegation, offered without specific substantiation, is insufficient to defeat EE's Motion For Summary Judgment. Sulkosky also contends that Terrie Taylor, the Office Manager, called Plaintiff a "sorry nigger," and that at a meeting between Sulkosky, Richard Tarentino, and Larry Eckels, Richard Tarentino allegedly said "Ya'll need to fire that nigger." (*Id.*) Even viewing these clearly derogatory statements in a light most favorable to the Plaintiff, they fail to aid his claims.

██ First, there is no evidence that these statements were made by individuals involved in the challenged decisions regarding Plaintiff's employment. *See Trotter,* 91 F.3d at 1454–54. Second, Plaintiff does not offer any evidence of a nexus between these observed statements and Plaintiff's discharge or alleged disparate treatment in employment decisions. In other words, Plaintiff has failed to link these alleged statements to any discriminatory intent on the part of decision makers. Third, to the extent Plaintiff may be asserting a hostile environment claim, the Supreme Court made clear in *Harris* that the " 'mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Harris,* 510 U.S. at 17, 114 S.Ct. 367. The court finds that the alleged statements here, individually or taken together, although patently offensive and derogatory, do not meet the threshold for stating a hostile work environment claim under *Harris,* 510 U.S. at 27, 114 S.Ct. 367. For these reasons, Plaintiff's disparate treatment in employment decisions claims fail as well.

### ORDER

Based on the foregoing, it is hereby CONSIDERED and ORDERED that Defendant's Motion For Summary Judgment on all of Plaintiff's claims be and the same is hereby GRANTED. It is further CONSIDERED and ORDERED that because this Order disposes of all pending issues, this action be and the same is hereby DISMISSED in its entirety, each Party to bear its own costs.