**George W. NIX, Jr., Plaintiff-Appellee,**

v.

**WLCY RADIO/RAHALL COMMUNICATIONS, Defendant-Appellant.**

**No. 82–5769.**

United States Court of Appeals, Eleventh Circuit.

Aug. 13, 1984.

Rehearing and Rehearing En Banc Denied Oct. 25, 1984.

Claude H. Tison, Jr., Tampa, Fla., for defendant-appellant.

Stevan T. Northcutt, Tampa, Fla., for plaintiff-appellee.

Before TJOFLAT and FAY, Circuit Judges, and WISDOM*, Senior Circuit Judge.

WISDOM, Senior Circuit Judge:

George Nix brought this Title VII action after he was fired from his job as a disc jockey on WLCY Radio in Tampa. WLCY alleged that Nix was fired for violating a company rule against competitive moonlighting. Nix, who is black, alleged that the moonlighting accusation was a pretext for racial discrimination. After a bench trial, the court entered judgment for Nix and awarded him $20,000 in back pay and $8,216 in attorney fees. We hold that there is insufficient evidence to support the trial court's finding that Nix was fired because of his race, and we reverse.

## I.

WLCY first hired Nix as a part-time radio announcer in late 1970. In 1971, after Nix filed an EEOC complaint, WLCY made him a full-time announcer. In addition to their regular salaries, announcers were often paid "talent fees" for work done on commercials. In January 1976, Nix made a commercial at WLCY for Air Florida. Nix believed that he was entitled to a talent fee for his commercial. He spoke to Tom Watson, the General Manager, about the fee, but he was unable to get an answer. On Wednesday, January 21, 1976, Nix left a typewritten note, along with a business card, on Watson's desk. The note asked Watson to "advise ... as to the necessary billing procedure" and added, "A copy of my production rate card is enclosed". The "production rate card" was a business card for Galaxy Productions. The card contained a list of prices for different lengths of commercials, and carried the names of George Nix and Ted Webb. Ted Webb was the air name of Henry Ruiz, another an-

nouncer at WLCY. Galaxy Productions was the name of a production venture that Webb and Ruiz had attempted to start in 1975, when Ruiz was not working at WLCY. The trial court found that Galaxy Productions had never been more than an idea, and had never done any actual business.

The card appeared to be a current business card, however. Watson reported to the station's executive committee that Nix and Ruiz had violated the station's moonlighting policy by producing commercials in competition with WLCY and by failing to report outside activities. The executive committee decided on Thursday to fire Nix and Ruiz, and Watson had final paychecks drawn for both.

On Friday, January 23, 1976, Watson met with Nix and Ruiz and told them they had been fired. In the ensuing discussion, it became clear that Ruiz had not been an employee of WLCY when he was involved in Galaxy Productions. Nix testified that he also told Watson that Galaxy had never done any business; Watson disputed this at trial. In any event, Watson fired Nix and gave him his final paycheck, but Watson tore up Ruiz's final paycheck and decided not to fire him.

On Monday Nix delivered a letter to Watson asking for reinstatement and explaining that Galaxy Productions was "DEFUNCT ... DISBANDED ...." Watson told Nix that the station would not reconsider the termination.

After his discharge, Nix filed a complaint with the NLRB alleging that he had been fired in retaliation for union activities. This claim was eventually dismissed. On March 18, 1976, Nix filed a complaint with the EEOC charging that his firing was racially motivated. Later that summer, WLCY hired a black to replace Nix. In July 1978 the EEOC issued a right-to-sue letter; Nix filed suit on October 12, 1978. The case was tried to the court on February 17–18 and April 10, 1981. On June 23,

---

* Honorable John Minor Wisdom, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1981 the court issued its findings of fact and conclusions of law as to liability. The court found that Nix had established a prima facie case of racial discrimination because he was fired while Ruiz, who is white, was retained "under apparently similar circumstances". This placed upon WLCY the burden of articulating a legitimate, nondiscriminatory reason for the firing. *Texas Department of Community Affairs v. Burdine*, 1981, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207. The court found that the defendant met this burden by asserting that Nix was fired because the station believed he had violated its moonlighting policy. But the court found that this articulated reason was "incredible in the light of the facts found herein", "that said belief was not validly held", and that this reason "was in fact a pretext for prohibited racial discrimination under Title VII". The court found that "defendant terminated plaintiff on January 23, 1976, because of his race".

## II.

■■■ A Title VII disparate treatment plaintiff must prove that the defendant acted with discriminatory purpose. *Clark v. Huntsville City Board of Education*, 11 Cir.1983, 717 F.2d 525, 529. Because direct evidence of discriminatory animus can be difficult to produce, it is often appropriate to analyze circumstantial evidence of discrimination according to the three-step procedure first developed in *McDonnell Douglas Corp. v. Green*, 1973, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. Under that procedure, the plaintiff must create an inference of discrimination by establishing a prima facie case. If he does so, the defendant must "articulate some legitimate, nondiscriminatory reason for the employee's rejection". *Id.* at 802, 93 S.Ct. at 1824. The plaintiff may then attempt to show that these reasons are pretextual or may present other evidence to show that discriminatory intent was more likely the cause of the employer's actions. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The *McDonnell Douglas-Burdine* framework

is a valuable tool for analyzing evidence in cases involving alleged disparate treatment. *See Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, at 1129–1130 [1984]. But that framework is only a tool. The "ultimate question" in a disparate treatment case is not whether the plaintiff established a prima facie case or demonstrated pretext, but "whether the defendant intentionally discriminated against the plaintiff". *United States Postal Service Board of Governors v. Aikens*, 1983, 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403, 409–10; *see also Lehman v. Trout*, 1984, —— U.S. ——, 104 S.Ct. 1404, 79 L.Ed.2d 732. A *McDonnell Douglas* prima facie case creates an inference of discrimination by eliminating "the most common nondiscriminatory reasons for the plaintiff's rejection". *Burdine*, 450 U.S. at 253–54, 101 S.Ct. at 1093–94. If the employer's articulated reasons are then found to be pretextual, leaving no valid reason for the employer's actions, it is likely that discrimination was the true reason. *See Aikens*, 460 U.S. at ——, 103 S.Ct. at 1482, 75 L.Ed.2d at 409–410; *id.*, 460 U.S. at —— , 103 S.Ct. at 1483, 75 L.Ed.2d at 412 (Blackmun, J., concurring). "[W]hen all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with *some* reason, based his decision on an impermissible consideration such as race." *Furnco Construction Corp. v. Waters*, 1978, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957. But when the plaintiff fails to make out a prima facie case, a showing of pretext, without more, will not necessarily support a finding of racial discrimination. "Only when defendants' articulated reason is pretext 'for accomplishing a racially discriminatory purpose' will the plaintiff recover.... The court thus may not circumvent the intent requirement of the plaintiff's ultimate burden of persuasion by couching its conclusion in terms of pretext; a simple finding that the defendant did not truly rely on its proffered reason, without a further finding

that the defendant relied instead on race, will not suffice to establish Title VII liability." *Clark*, 717 F.2d at 529 (citation and footnote omitted).

 Intentional discrimination is an issue of fact. *Pullman-Standard v. Swint*, 1982, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66. "[T]his Court may reverse a finding of intentional discrimination only if the finding is clearly erroneous." *Lincoln v. Board of Regents*, 11 Cir.1983, 697 F.2d 928, 940, *cert. denied*, 1983, — U.S. —, 104 S.Ct. 97, 78 L.Ed.2d 102. The "clearly erroneous" standard of review requires substantial deference to the findings of the district court, but "[o]ur deference to the district court is not unlimited, ... and we will hold a finding of fact clearly erroneous if the record lacks substantial evidence to support it". *Id.* at 939. Although we find some support for the district court's conclusion that the articulated reason for Nix's firing was not the true reason, we find no evidence sufficient to sustain the court's conclusion that the true reason was racial discrimination.

### III.

There is no direct evidence of racial animus on the part of WLCY or its employees. WLCY contends that this absence of direct evidence is fatal to Nix's claim. WLCY recognizes that discriminatory discharge may be established from circumstantial evidence, but asserts that this cannot be done when the terminated minority-group employee is replaced by another member of the same minority group. Because Nix was replaced by a black, WLCY argues that Nix can prevail only if he produces direct evidence of discriminatory purpose.

 This argument is unpersuasive. "The prima facie case method ... was 'never intended to be rigid, mechanistic, or ritualistic.'" *Aikens*, 460 U.S. at 715, 103 S.Ct. at 1482, 75 L.Ed.2d at 410, quoting *Furnco*, 438 U.S. at 577, 98 S.Ct. at 2943. A prima facie case of discriminatory discharge may be established in different ways. One way is the method recognized by WLCY: a member of a protected class makes out a prima facie case if he establishes that he was qualified for the job, but was fired and replaced by one outside the protected class. *Krieg v. Paul Revere Life Ins. Co.*, 11 Cir.1983, 718 F.2d 998, 999 (per curiam), *cert. denied*, 1984, — U.S. —, 104 S.Ct. 1712, 80 L.Ed.2d 185 (1984); *Lincoln*, 697 F.2d at 937; *Marks v. Prattco*, 5 Cir.1979, 607 F.2d 1153, 1155. But we have also held that a plaintiff establishes a prima facie case by showing that he was suspended or fired while others not in the plaintiff's protected class, "having comparable or lesser qualifications", were retained. *Whiting v. Jackson State University*, 5 Cir.1980, 616 F.2d 116, 121.

 Nix relies on a third version of the prima facie case, based on differential application of work or disciplinary rules. In *McDonald v. Santa Fe Trail Transportation Co.*, 1976, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493, the Court held that an employer would violate Title VII if it fired black employees who participated in a theft of cargo while retaining whites guilty of the same offense. *Id.*, 427 U.S. at 282–84, 96 S.Ct. at 2579–80. We have consistently held that a plaintiff fired for misconduct makes out a prima facie case of discriminatory discharge if he shows that he is a member of a protected class, that he was qualified for the job from which he was fired, and "that the misconduct for which [he] was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained". *Davin v. Delta Air Lines, Inc.*, 5 Cir. Unit B 1982, 678 F.2d 567, 570; *accord Rohde v. K.O. Steel Castings, Inc.*, 5 Cir.1981, 649 F.2d 317, 322–23; *Brown v. A.J. Gerrard Mfg. Co.*, 5 Cir.1981, 643 F.2d 273, 276; *Green v. Armstrong Rubber Co.*, 5 Cir.1980, 612 F.2d 967, 968 (per curiam), *cert. denied*, 1980, 449 U.S. 879, 101 S.Ct. 227, 66 L.Ed.2d 102; *Turner v. Texas Instruments, Inc.*, 5 Cir.1977, 555 F.2d 1251, 1255; *see also Anderson v. Savage Laboratories*, 11 Cir.1982, 675 F.2d 1221, 1224. The prima facie case is established even if the plaintiff's replacement is also a member of the protected class. *Cockrham v.*

*South Central Bell Telephone Co.,* 5 Cir. 1983, 695 F.2d 143, 145 (per curiam); *EEOC v. Brown & Root, Inc.,* 5 Cir.1982, 688 F.2d 338, 340; *Byrd v. Roadway Express, Inc.,* 5 Cir.1982, 687 F.2d 85, 86–87. "The principal focus of [Title VII] is the protection of the individual employee, rather than the protection of the minority group as a whole." *Connecticut v. Teal,* 1982, 457 U.S. 440, 453–54, 102 S.Ct. 2525, 73 L.Ed.2d 130.

Title VII does not "give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group". *Id.,* 457 U.S. at 455, 102 S.Ct. at 2535. Nor does Title VII allow an employer to escape liability for discriminatorily discharging an individual by maintaining an overall balance in the work force. *Furnco,* 438 U.S. at 579, 98 S.Ct. at 2950. "Punitive action against employees for violating work rules must not differentiate on the basis of ... any of the ... criteria reprobated by Title VII." *Brown & Root,* 688 F.2d at 340. When an individual proves that he was fired but one outside his class was retained although both violated the same work rule, this raises an inference that the rule was discriminatorily applied against that individual, regardless of the race or sex of the replacement.[1]

Nix could therefore establish a prima facie case of racial discrimination by establishing that he was fired but Ruiz was retained for "nearly identical" conduct. *Davin,* 678 F.2d at 570. The record is clear, however, that their circumstances were different. At trial, it was undisputed that Watson, the general manager, decided not to fire Ruiz after he learned that Ruiz had not been involved in Galaxy Productions while employed by WLCY. Although there was some dispute about what Nix told Watson, there was no dispute that Nix was an employee of WLCY throughout the relevant period.[2]

Nix "has failed to link this inconsistency [retention of Ruiz] with a discriminatory motive". *Fong v. American Airlines, Inc.,* 9 Cir.1980, 626 F.2d 759, 762. Nondiscriminatory differences just as readily explain the difference in treatment. *Id.; Davin,* 678 F.2d at 571. The district court found that neither Ruiz or Nix had, in fact, violated the station's moonlighting policy. But this was not the relevant consideration. Ruiz was retained because the station's policies did not apply to him: he was not an employee when he was involved in Galaxy Productions, and Watson knew it. "[I]f an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown". *Chescheir v. Liberty Mutual Insurance Co.,* 5 Cir.1983, 713 F.2d 1142, 1148; *accord Turner,* 555 F.2d at 1256–57. The district court's finding of "apparently similar circumstances" is clearly erroneous.[3]

---

1. The race of Nix's replacement is not irrelevant. The trial court could consider that Nix was replaced by a black as evidence tending to show that WLCY's articulated reason for firing Nix was not a pretext for racial discrimination. At the same time, the trial court could also have considered any evidence tending to show that Nix's replacement by a black was "a pretextual device, specifically designed by [WLCY] to disguise its act of discrimination toward [Nix]". *Jones v. Western Geophysical Co. of America,* 5 Cir.1982, 669 F.2d 280, 284. The court could have considered as well any evidence showing that although WLCY maintained a racially integrated workforce it was less tolerant of indiscretions committed by black employees than of those committed by whites. *McDonald,* 427 U.S. at 282–83, 96 S.Ct. at 2579–80. Apart from the single incident that led to Nix's firing, how-

ever, there was no evidence of any pretext or of any practice of disparate treatment.

2. Ruiz testified that both he and Nix made clear to Watson that Ruiz had nothing to do with Galaxy in January 1976, or at any time when Ruiz was employed at WLCY. 2 Record 210–11, 223. Watson also testified that both Nix and Ruiz made Ruiz's noninvolvement clear. 3 Record 153–54, 155–56. Nix testified that he told Watson that neither he nor Ruiz had competed with WLCY, but Nix also acknowledged that he had tried to start a production company while he, *but not Ruiz, was working for WLCY.* 2 Record 94, 163–64.

3. The district court's decision does not mention the distinction argued by WLCY: that Ruiz was not a WLCY employee when he was involved in

Nix did not meet his burden of showing that a white employee *in similar circumstances* was retained while he was fired. He failed, therefore, to make out a prima facie case or to create an inference of discrimination. *Davin*, 678 F.2d at 571; *Green*, 612 F.2d at 968.

Because Nix did not make out a prima facie case, he cannot prevail merely by showing that the articulated reason for his termination was probably not the true reason. *Clark*, 717 F.2d at 529. The district court based its finding of intentional discrimination on the combined force of what it believed to be a prima facie case and the evidence that Nix had not, in fact, violated the station's work rules. In concluding that Nix had made out a prima facie case, however, the court erred as a matter of law. *Carmichael*, 738 F.2d at 1130; *Gay v. Waiters & Dairy Lunchmen's Union Local 30*, 9 Cir.1982, 694 F.2d 531, 539–46. The court's finding of intentional discrimination must therefore be reversed. *Pullman-Standard*, 456 U.S. at 287, 102 S.Ct. at 1789.

### IV.

■ Intentional discrimination is a question of fact. We must, therefore, remand this case to the district court for findings under the correct legal standard "unless the record permits only one resolution of the factual issue". *Pullman-Standard*, 456 U.S. at 292, 102 S.Ct. at 1791. Here remand is unnecessary because the record compels a finding that Nix did not prove intentional discrimination. The differential treatment of Nix and Ruiz is not enough, by itself, to support judgment for Nix. There is nothing else in the record that suggests any racial animus in WLCY's decision to fire Nix. Nix may have shown

that he was fired for violating a rule that he did not violate. But Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules. "Title VII addresses *discrimination.*" *Ferguson v. Veterans Administration*, 11 Cir.1984, 723 F.2d 871, 872. "Title VII is not a shield against harsh treatment at the workplace." *Jackson v. City of Kileen*, 5 Cir.1981, 654 F.2d 1181, 1186. Nor does the statute require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason. *Megill v. Board of Regents*, 5 Cir.1976, 541 F.2d 1073, 1077; *Sullivan v. Boorstin*, 1980, D.D.C., 484 F.Supp. 836, 842. "While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason ... does not have to be a reason that the judge or jurors would act on or approve." *Loeb v. Textron, Inc.*, 1 Cir.1979, 600 F.2d 1003, 1012 n. 6. Although WLCY's decision to fire Nix, and its refusal to reconsider that decision, might seem unfair or even "incredible" to outside observers, Nix cannot prevail in his Title VII action for he has not established discriminatory intent. He has produced neither direct nor circumstantial evidence sufficient to support such a finding. In the absence of evidence pointing to race as the explanation for the employer's conduct, we must hold that Nix has failed to meet his burden of proof.

The judgment is REVERSED.

---

the Galaxy Productions venture. There is some indication that the court thought that WLCY was arguing instead that it fired Nix for moonlighting but retained Ruiz because Nix told Watson that neither had moonlighted. The court stated:

"Defendant would urge in support of its position that there was a different reason for not discharging Mr. Ruiz. They basically want to—want me to accept what they say is

the plaintiff's testimony about that, or his statement, so they have credited his statement in that regard, but not credited when he says that he explained the same thing to Mr. Watson about himself that he did about Mr. Ruiz, they are going to accept that testimony in support of their position that there was good reason not to fire Mr. Ruiz, but not accepted with regard to Mr. Nix."

3 Record 28.