Sue E. WEAVER, Plaintiff,

v.

TECH DATA CORPORATION,
Defendant.

No. 98–956–CIV–T–17E.

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 3, 1999.

Robert F. McKee, Kelly & McKee, P.A., Tampa, FL, for Sue E. Weaver, plaintiff.

Karen M. Buesing, Danielle R. May, Zinober & McCrea, P.A., Tampa, FL, for Tech Data Corp., defendant.

## ORDER ON PLAINTIFF'S MOTION TO STRIKE and DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, Chief Judge.

THIS CAUSE is before the Court on Plaintiff, Sue E. Weaver's, Motion to Strike, (Dkt.23), filed on May 21, 1999, Defendant, Tech Data Corporation's, response, (Dkt.36), filed on June 7, 1999, Defendant, Tech Data Corporation's, Motion for Summary Judgment, (Dkt.12), filed on April 5, 1999, and Plaintiff, Sue. E. Weaver's, response thereto, (Dkt.24), filed on May 21, 1999.

### BACKGROUND

Plaintiff's Complaint, (Dkt.1), filed on May 6, 1998, alleges that Defendant, an "employer" within the meaning of Title VII, has violated Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e–5 et seq., by engaging in employment discrimination on the basis of sex. The following factual allegations are taken from Plaintiff's Complaint. (Dkt.1). Plaintiff is a female and was at all material times an "employee" of Defendant, within the meaning of Title VII. Plaintiff's employment with Defendant began in May 1994. In May 1997, Plaintiff was assigned to a new project and as a result of this assignment Plaintiff was required to report to an individual named John Matthews. Plaintiff asserts that in May 1997, Plaintiff was told by Matthews that Plaintiff had no future with Defendant and Plaintiff should begin to look for other employment opportunities. The day after Plaintiff was told to look for other employment, Matthews gave Plaintiff a two (2) page document outlining alleged performance problems attributed to Plaintiff. At this time, Plaintiff was, once again, told by Matthews to seek other employment opportunities.

Plaintiff's title and responsibilities were removed following these confrontations with Matthews. Defendant's Human Resources Department failed to restore Plaintiff's employment position and as a result Plaintiff resigned. Plaintiff alleges that her sex was a motivating factor in Defendant's decision to constructively discharge Plaintiff. Plaintiff states that similarly situated male employees of Defendant, were not told to seek other employment opportunities, even if those male employees had performance problems similar to those alleged to be attributable to Plaintiff. Plaintiff states that as a direct result of Defendant's actions, Plaintiff has suffered and continues to suffer from a loss of income, loss of fringe benefits, emotional distress, mental anguish, and loss of professional reputation. Plaintiff states that she has exhausted all administrative remedies.

Plaintiff requests that: (1) this Court take jurisdiction over this action; (2) judgment be entered against Defendant; (3) as a result of judgment being entered against Defendant, Plaintiff be awarded lost pay and the value of lost fringe benefits; (4) an award of compensatory damages be entered in Plaintiff's favor; (5) Defendant be directed to reinstate Plaintiff to Plaintiff's former position, or a similar position, or award Plaintiff front pay; and (6) that this Court award Plaintiff costs, attorney's fees, and pre/post judgment interest.

Defendant's answer to Plaintiff's Complaint, (Dkt.5), was filed on July 10, 1998. Defendant's answer admitted that: (1) Plaintiff was formerly employed by Defendant; (2) Plaintiff is a female; (3) Defendant is an "employer" under Title VII; (4) Plaintiff, at some time, reported to Matthews in the course of Plaintiff's employment with Defendant; (5) Plaintiff's title and responsibilities changed in or around June 1997; and (6) Plaintiff resigned from her employment with Defendant.

Defendant further asserts that: (1) to the extent that Plaintiff failed to exhaust administrative remedies, Plaintiff's claims are barred; (2) to the extent that Plaintiff failed to mitigate damages, Plaintiff's claims are barred; (3) that Defendant would have taken the same employment action against Plaintiff in the absence of the alleged discriminatory motives; (4) to the extent that Plaintiff's claims violate statutes of limitation, Plaintiff's claims are barred; and (5) to the extent that Plaintiff's claims are based on conduct occurring more than three-hundred (300) days before Plaintiff's charge was field with the Equal Employment Opportunity Commission (hereinafter "EEOC") Plaintiff's claims are barred.

### I. Motion to Strike

Plaintiff asserts that certain portions of affidavits submitted by Defendant in support of Defendant's Motion for Summary Judgment must be stricken pursuant to Federal Rule of Civil Procedure 12(f). Specifically, Plaintiff asserts that paragraph six (6) of Richard Sevigny's affidavit must be stricken because Sevigny's deposition testimony controverted the testimony contained within the affidavit.

Plaintiff also moves to strike numerous other parts of the affidavits submitted because, according to Plaintiff, they consist of inadmissable hearsay. In particular, Plaintiff seeks to strike:

1) paragraph four (4) of David Duncan's affidavit, which states "Eden informed me that I had several employee issues to address in my area, one of which was [Plaintiff]. One of [Plaintiff's] observed tendencies was to go beyond the approved scope on projects and, therefore, not complete projects on time or within budget.";

2) all of paragraph seven (7) of Duncan's affidavit because "Duncan was not in attendance at [the meeting to which Duncan refers] ..., and any knowledge that [Duncan] has regarding the meeting must have come from someone else's telling him about it.";

3) paragraph eight (8) of Duncan's affidavit because "Duncan has recounted what he was told by two [ (2) of Defendant's] other management officials.";

4) a portion of paragraph nine (9) of Duncan's affidavit, which reads "I ... confirmed hat [Plaintiff] gave the team working on the IDP Project instructions to take the project in a different direction than originally assumed by [Defendant]. [Plaintiff] did so without discussing her intentions with her superiors.";

5) a portion of paragraph eleven (11) of Duncan's affidavit, which states "Matthews denied that he made that statement.";

6) portions of paragraphs twelve (12), thirteen (13), and fifteen (15) of Duncan's affidavit, as those paragraphs relate to Plaintiff;

7) a portion of paragraph fourteen (14), which reads "Shepherd was concerned strictly about Belloise's failure to meet scheduled deadlines for the completion of [the] project.";

8) a portion of paragraph fourteen (14), which reads "Wendy Purrman ... felt that the relationship between Belloise and his manager was part of the problem. She was aware of the issues expressed by Shepherd, and asked if Belloise would be allowed to join her team.";

9) a portion of paragraph three (3) of Matthews' affidavit, which reads "... I was aware from conversations with colleagues that [Plaintiff] had a tendency to

do work that was beyond the scope of projects to which she was assigned."; 10) a portion of paragraph seven (7) of Matthews' affidavit, which reads "... indicated to several in attendance," ... which, according to Plaintiff, shows that Matthews is attesting to information that Matthews was told by others; 11) a portion of paragraph eight (8) of Matthews' affidavit, which reads "... communicating the concern of the majority of the people at the meeting...."; 12) a portion of paragraph three (3) of Dusty Williams' affidavit, which reads "... I learned that Eden supervised [Plaintiff's] management of [Defendant's] Online Project. [Plaintiff] was not familiar with client server development and had a tendency to present plans which were too extravagant and, thus, expensive, for the client's needs."

### A. Standard of Review

■ Federal Rule of Civil Procedure 12(f) provides that upon motion by a party or upon the court's initiative at any time, the court may order stricken from any pleading any "redundant, immaterial, impertinent, or scandalous matter." A motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties. *See Poston v. American President Lines, Ltd.*, 452 F.Supp. 568, 570 (S.D.Fla.1978) (citing *Augustus v. Board of Public Instruction*, 306 F.2d 862, 868–69 (5th Cir.1962)).

■ Rule 56(e) of the Federal Rules of Civil Procedure states that an affidavit "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to matters stated therein." Because affidavits must be based on personal knowledge, an affidavit based on nothing more than "information and belief" is not sufficient as a matter of law. *Givhan v. Electronic Engineers, Inc.*, 4 F.Supp.2d 1331, 1334 (M.D.Ala.1998).

■ The court may only consider evidence that would be admissible in trial. *See id.* Therefore, the court may not consider inadmissible hearsay when deciding a motion for summary judgment. *See Bush v. Barnett Bank of Pinellas County*, 916 F.Supp. 1244, 1256 (M.D.Fla.1996). When an affidavit submitted in support of or opposition to a motion for summary judgment contains inadmissible evidence, the court may strike the inadmissible portions of the affidavit and consider the rest. *See Lee v. National Life Assurance Co.*, 632 F.2d 524, 529 (5th Cir.1980).

Plaintiff, in the case at hand, states that several affidavits submitted by Defendant in support of summary judgment contain inadmissible hearsay. However, the Court notes that Plaintiff cites only Federal Rule of Civil Procedure 12(f) in the "Memorandum of Law" contained within Plaintiff's Motion to Strike. Plaintiff fails to cite any binding case law, any rule, or any statute to support its allegations of hearsay. However, the Court finds, after fully examining the applicable law, that Plaintiff's Motion to Strike, as it relates to inadmissible hearsay, is not justified.

■ Federal Rule of Evidence 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "[An] out of court utterance must have two [ (2) ] characteristics before it is rendered inadmissible as hearsay: It must be a 'statement'—that is a verbal assertion or conduct intended as an assertion, and it must be offered to probe the truth of the matter it asserts." *United States v. Cruz*, 805 F.2d 1464, 1477 (11th Cir.1986) (citations omitted). Therefore, "verbal or nonverbal conduct, when it is offered as a basis for inferring something other than the matter asserted," is excluded from the hearsay rule. *Id.* (citations omitted). "Consequently, an utterance may be admitted to show the effect it has on a hearer. Such verbal acts are not in the first instance assertive statements and

[are] not offered to prove the truth of the matter asserted." *Id.* (citations omitted); *see also Givhan,* 4 F.Supp.2d at 1335 (stating that even though an affidavit contains statements that recount information allegedly made by other individuals, the information and statements made are admissible when they are not offered to prove the truth of the matters asserted, but are offered to prove only that the statements were made); *Federal Deposit Insurance Corp. v. Stahl,* 89 F.3d 1510, 1521 (11th Cir.1996) (stating that where a transcript is offered to show knowledge of the alleged problems surrounding an individuals employment, and not to establish the intrinsic truth of those problems, the transcript is not hearsay); *United States v. Parry,* 649 F.2d 292, 295 (5th Cir.1981) (stating that an out of court statement offered to show circumstantial evidence of the declarant's knowledge of the existence of some fact, as opposed to being offered·to prove the truth of the matter asserted, is admissible and is not hearsay); *United States v. Jennings,* 527 F.2d 862, 869 (5th Cir.1976) (stating that where a statement is offered merely to show that the statement was made, the statement is not hearsay).

■ After reviewing the affidavits submitted by Defendant, Plaintiff's Motion to Strike, and Defendant's answer, the Court finds that the portions of Defendant's affidavits which are sought to be stricken are not hearsay. Defendant is not offering any portion of the applicable affidavits to prove the truth of the matter asserted. Defendant relies on the affidavits in question to establish the effect that the alleged hearsay statements had on the listener. The statements, as asserted by Defendant, are not being offered to show the truth or falsity of the assertions contained therein, but are offered to show that "[Defendant's] demotion of [Plaintiff] was based on performance deficiencies—whether real or perceived—not on [Plaintiff's] gender." (Dkt.36). The assertions that Plaintiff alleges are inadmissible hearsay are "not offered to prove the truth of the matter asserted, but to demonstrate the assertions' effect on the managers who partici-

pated in making the decision to demote [Plaintiff]." (Dkt.36). Therefore, the Court finds that Plaintiff's Motion to Strike portions of Defendant's affidavits for containing inadmissable hearsay will be denied.

■ Plaintiff also requests that the Court strike paragraph six (6) of Sevigny's affidavit because Sevigny's affidavit is directly controverted by subsequent deposition testimony. Paragraph six (6) of Sevigny's affidavit states that:

I have reviewed the employment records regarding Matthews, Chris Belloise ("Belloise") and John Dunne ("Dunne"). Matthews never occupied any of the positions [Plaintiff] occupied [while employed with Defendant]. Although Belloise and Dunne occupied positions similar to those which [Plaintiff] held [while employed with Defendant], [Defendant's] records indicate that Belloise, Dunne, and Matthews did not routinely exceed the scope of their assigned projects or make promises to other management which could not be kept.

(Dkt.12).

Sevigny's transcript testimony states that:

Q. ... What I'm asking you is did you review [Defendant's] files regarding [Plaintiff] and [Defendant's] files regarding Chris Belloise?

A. No.

Q. Have you ever reviewed any files regarding Chris Belloise?

A. No.

Q. I'm handing you a document that's been marked for identification as Exhibit No. 12. Take a moment and look that over.

. . . . .

Q. Are you familiar with this document?

A. Yes.

Q. And how are you familiar with it?

A. Um, I was asked to create information to create this document.

. . . . .

Q. I want to ask you about paragraph six [ (6) ]. It says, "I have reviewed the employment records regarding Matthews, Chris Belloise, and John Dunne." Did you do that?

A. No, I did not.

Q. Why did you state that in your affidavit?

A. I think it's a mistake. I probably just read the top sheet and signed it, to be honest. It's an error. That would not have been in my purview to do that.

(Dkt. 28, pages 121–122).

Defendant responds to Plaintiff's Motion to Strike Sevigny's affidavit by stating that only those portions of Sevigny's affidavit about which Plaintiff has established Sevigny's lack of personal knowledge should be stricken. In particular, Defendant states that only the first sentence of paragraph six (6) should be stricken, because Plaintiff has not established that Sevigny had no personal knowledge of the other sentences contained within paragraph six (6). In support of this assertion, Defendant cites to Sevigny's deposition testimony, which, according to Defendant, establishes that Sevigny had personal knowledge of the other matters contained within paragraph six (6). Specifically, Defendant relies on a portion of Sevigny's deposition transcript, which states that:

Q. Turn to paragraph six [ (6) ]. Isn't it correct that John Matthews never occupied any of the positions similar to those which [Plaintiff] occupied [while employed with Defendant]?

A. That is true. John was at higher level positions.

. . . . .

Q. ... Isn't it correct that Chris Belloise did not routinely exceed the scope of his projects?

. . . . .

A. That is correct, he did not exceed the scope of his responsibility ...

Q. And isn't it correct that John Dunne did not routinely exceed the scope of his assignments?

A. Not routinely, no.

Q. And isn't it correct that John Matthews did not routinely exceed the scope of his assignments?

A. Definitely not.

(Dkt. 28, pages 131–32).

After reviewing Sevigny's transcript and affidavit, the Court finds that a portion of paragraph six (6) of Sevigny's affidavit must be stricken. Plaintiff and Defendant agree that the first sentence of paragraph six (6) of Sevigny's affidavit must be stricken. Therefore, the Court will strike the first sentence of paragraph six (6). However, the Court finds that the only sentence contained within paragraph six (6) that will not be stricken is the second sentence, which reads "Matthews never occupied any of the positions [Plaintiff] occupied at [Defendant]." (Dkt.12).

The third and final sentence contained in paragraph six (6) of Sevigny's affidavit, states: "Although Chris Belloise and John Dunne occupied positions similar to those which Weaver held at Tech Data, Tech Data's *records* indicate that Belloise, Dunne, and Matthews did not routinely exceed the scope of their assigned projects or make promises to other management which could not be kept." (Dkt.12) (emphasis added). As contained within Sevigny's deposition testimony, Sevigny had no knowledge of the employment records regarding Matthews, Belloise, or Dunne. As such, Sevigny had no way of knowing what the records indicate regarding whether or not Belloise, Dunne, or Matthews routinely exceeded the scope of their assigned projects.

The arguments presented by Defendant are well taken and the Court notes that Sevigny's deposition testimony does indicate personal knowledge of the issues at hand. However, the affidavit states that Sevigny is testifying to what the records indicate. Since Sevigny has subsequently

asserted that he never reviewed those records, Sevigny's statements regarding the records and what is contained within the records will be stricken.

## II. Summary Judgment

### A. Standard of Review

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

> The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue of material fact' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of the case with respect to which that party has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of genuine issues of material fact. *See id.* That burden can be discharged by "showing ... that there is an absence of evidence to support the non-moving party's case." *See id.* at 323, 325, 106 S.Ct. 2548.

Issues of fact are " 'genuine' only if a reasonable jury considering the evidence presented could find for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *See id.* at 248, 106 S.Ct. 2505. In determining whether a material fact exists, the court must consider all the evidence in a light most favorable to the non-moving party. *See Sweat v. Miller Brewing Co.,* 708 F.2d 655, 656 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *See Hayden v. First Nat'l Bank of Mt. Pleasant,* 595 F.2d 994, 996–97 (5th Cir., 1979) (quoting *Gross v. Southern Railway Co.,* 414 F.2d 292, 297 (5th Cir.1969)).

Although factual disputes preclude summary judgment, the "mere possibility that factual disputes may exist, without more, is not sufficient to overcome a convincing presentation by the party seeking summary judgment." *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). When a party's response consists of "nothing more than a repetition of his conclusional allegations" summary judgment is not only proper but required. *Morris v. Ross,* 663 F.2d 1032, 1034 (11th Cir.1981).

### B. Undisputed Facts

Plaintiff, in the case at hand, alleges discrimination under both a disparate treatment theory and under constructive discharge. The undisputed facts show that Plaintiff was originally hired by Defendant to work on Defendant's Distribution Control System [hereinafter "DCS"]. However, Plaintiff also worked at Defendant's "Help Desk" and for a five (5) or six (6) month period was assigned to the Tech Data On–Line Development Group (hereinafter "TDO"). While assigned to the TDO, Plaintiff was supervised by Dusty Williams and Bruce Eden. At some point after Plaintiff was assigned to the TDO, Plaintiff stated a desire to be reassigned because Plaintiff did not understand the technical side of the TDO assignment.

Plaintiff was later assigned to Defendant's accounts payable and general ledger department. During the time Plaintiff worked on accounts payable and general

ledger, Plaintiff reported to Phil Carter. Due to reorganization, Plaintiff was later required to report to Matthews.

While under the supervision of Matthews, Plaintiff worked on the IDP Project. IDP was a customer of Defendant's that was interested in becoming a partner with Defendant in order to fulfill a contract IDP had with the Department of Defense. The contract IDP had with the Department of Defense involved a time frame of sixty to ninety days for completion of the contract. Plaintiff and Matthews discussed the time frame and risks applicable to the IDP Project.

In May 1997, Plaintiff held a meeting to discuss the IDP project. On or about May 28, 1997, Matthews discussed the previous mentioned meeting with Plaintiff. Matthews discussed his concerns about meeting the time frame of the IDP project in light of information discussed at the previous meeting held by Plaintiff. Matthews also expressed dissatisfaction with Plaintiff because Matthews did not want to spend a lot of time preparing estimates for changes in the IDP project. At this time, Matthews reminded Plaintiff of the deadline for the IDP project. On or about May 28, 1997, Matthews removed Plaintiff from the IDP project. Plaintiff admits that Matthews told Plaintiff that Plaintiff was being removed from the IDP project because Plaintiff was incompetent.

After the original May 28th meeting, Plaintiff met with Matthews, Sevigny, and David Duncan to discuss Plaintiff's removal from the IDP project. As a result of this meeting, Plaintiff was offered an opportunity to transfer to a non-managerial position on another project. Plaintiff would not suffer a loss in pay by accepting the transfer. A short time after Plaintiff was offered the opportunity to transfer, Plaintiff resigned from her employment with Defendant.

Plaintiff's allegations of discrimination are based on Plaintiff's belief that a male employee would not have been reassigned under the same circumstances. Plaintiff bases her belief on allegations that three

other men did "bad things," at or about the same time Plaintiff is alleged to have acted improperly, and suffered no repercussions from their acts.

Plaintiff filed a charge of discrimination with the EEOC on November 25, 1997. This action was commenced on May 6, 1998.

### C. Discussion

Plaintiff alleges that Defendant violated Title VII, 42 U.S.C. § 2000e *et seq.*, by engaging in actions that constitute disparate treatment and constructive discharge. Defendant's Motion for Summary Judgment asserts that: 1) no material issues of fact exist as to whether Plaintiff was discriminated against on the basis of Plaintiff's gender; and 2) no material issues of fact exist as to whether Plaintiff was constructively discharged from her employment with Defendant.

 A claim of disparate treatment alleges that an individual employee received less favorable treatment due to the employee's race, color, sex, religion, or national origin. The plaintiff in a disparate treatment case must prove discriminatory intent in order to prevail. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Title VII, 42 U.S.C. § 2000e *et seq.,* prohibits employers from discriminating on the basis of sex. When claiming a violation of Title VII, the plaintiff bears the burden of proving that sex was a determining factor in the employer's decision to take action against the plaintiff. *See Walker v. NationsBank of Florida N.A.,* 53 F.3d 1548, 1555 (11th Cir.1995). The Eleventh Circuit recognizes three (3) manners in which a plaintiff can satisfy the burden of proof under Title VII: direct evidence of intentional discrimination; statistical evidence of discrimination; or by satisfying the four-part test established by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973). *See Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989).

■ Under *McDonnell Douglas* and *Burdine* the plaintiff bears the burden of establishing a prima facie case of sex discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. After the plaintiff establishes a prima facie case of sex discrimination the burden shifts to the defendant. *See Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. Once the burden shifts to the defendant, the defendant is required to show a "legitimate nondiscriminatory reason" for the alleged discriminatory action. *See id.* The defendant is only required to produce a nondiscriminatory reason for the alleged discriminatory actions. *See id.* Defendant is not required to bear the burden of proof. *See id.* Thus, the burden of production that shifts to the defendant, once a plaintiff has established a prima facie case of discrimination, is "exceedingly light" and easily established. *Perryman v. Johnson Products Co., Inc.,* 698 F.2d 1138, 1142 (11th Cir.1983). Once the defendant satisfies the burden of production, the plaintiff is required to prove by a preponderance of evidence that the defendant employer possessed a discriminatory intent. *See Burdine,* 450 U.S. at 256, 101 S.Ct. 1089.

■ In order to establish a prima facie case of discrimination, the plaintiff must show that: 1) the plaintiff is a member of a protected class under Title VII: 2) an adverse employment action occurred; 3) that plaintiff was treated differently than similarly situated employees who were not members of the protected class; and 4) that sufficient evidence exists to infer a nexus or causal connection between sex and the disparate treatment alleged. *See McKeon v. Vaicaitis,* 825 F.Supp. 290, 293 (M.D.Fla.1993) (citing *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 279, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir.1984)).

■ A constructive discharge case is like a disparate treatment case. When claiming constructive discharge, the plaintiff must allege that the employer intentionally rendered the working conditions so intolerable that the employee was compelled to quit involuntarily. *See Buckley v. Hospital Corp. of America, Inc.,* 758 F.2d 1525, 1530 (11th Cir.1985). To find constructive discharge, the trier of fact must be satisfied that working conditions were so difficult or unpleasant that a "reasonable person in the employee's shoes would have felt compelled to resign." *Garner v. Wal–Mart Stores, Inc.,* 807 F.2d 1536, 1539 (11th Cir.1987) (citing *Bourque v. Powell Electrical Mfg., Co.,* 617 F.2d 61, 65 (5th Cir.1980)).

■ When considering a motion for summary judgment, it is not enough, in and of itself, that the plaintiff has established a prima facie case of discrimination. *See Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 594 (11th Cir.1987). "The ultimate question in a disparate treatment case is not whether the plaintiff established a prima facie case or demonstrated pretext, but 'whether the defendant intentionally discriminated against the plaintiff.'" *Grigsby,* 821 F.2d at 595 (citing *Nix,* 738 F.2d at 1184.) Therefore, the plaintiff is required to do more than show proof of a prima facie case to avoid summary judgment. *See id.*

In the case at hand, because Plaintiff has not presented direct or statistical evidence of discrimination, Plaintiff must meet the four-part test set forth in *McDonnell Douglas.* Therefore, Plaintiff must produce evidence that she is a member of a protected class, that an adverse employment action occurred, that she and similarly situated non-protected employees were treated differently, and that there is a sufficient nexus between Plaintiff's gender and the alleged disparate treatment. In relation to these requirements, Defendant admits that Plaintiff is a member of a protected class and further admits that Plaintiff's reassignment from the IDP project constituted an adverse employment action. However, Defendant states that Plaintiff has not alleged evidence sufficient

to infer gender discrimination. As Defendant has agreed to Plaintiff's satisfaction of the first and second requirement of the four-part *McDonnell Douglas* test, the Court will only discuss the third and fourth requirements.

 Defendant states that Plaintiff cannot satisfy the third part of the *McDonnell Douglas* test because Plaintiff is unable to set forth any evidence to establish the fact that other similarly situated male employees were treated in a more favorable manner than Plaintiff. In order to establish the third part of the *McDonnell Douglas* test, Plaintiff must show that an adverse employment action occurred "while others not in [the] Plaintiff's protected class 'having comparable or lesser qualifications,'" were not treated adversely. *Nix,* 738 F.2d at 1185 (quoting *Whiting v. Jackson State Univ.,* 616 F.2d 116, 121 (5th Cir.1980)). In addition, Plaintiff is required to prove that Plaintiff's conduct was "nearly identical" to that engaged in by employees outside of Plaintiff's protected class that were not subjected to adverse employment action. *Nix,* 738 F.2d at 1185. This Court has previously stated that in order to make a proper comparison of the treatment of a plaintiff to the treatment of a non-protected individual, the plaintiff is required to show that the "comparable" non-minority co-workers are similarly situated in all respects. *See Williams v. Publix Warehouse,* 1995 WL 224423, *4 (M.D.Fla.1995) (citing *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992)). This Court has also stated that in order to be similarly situated, the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards, and must have also engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment. *See id.* (citing *Mazzella v. RCA Global Communications, Inc.,* 642 F.Supp. 1531, 1546 (S.D.N.Y.1986); *Lanear v. Safeway Grocery,* 843 F.2d 298, 301 (8th Cir.1988); *Cox v. Electronic Data*

*Systems Corp.,* 751 F.Supp. 680, 690 (E.D.Mich.1990)).

 When determining whether employees are similarly situated under the *McDonnell Douglas* test, "it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997)). When making the determination as to whether employees are similarly situated, it is most important for the court to consider the "nature of the offenses committed and the nature of the punishments imposed." *Jones v. Gerwens,* 874 F.2d 1534, 1539–40 (11th Cir.1989) (citing *Moore v. City of Charlotte,* 754 F.2d 1100, 1105 (4th Cir.1985)); *see Holifield,* 115 F.3d at 1562. If a plaintiff does not satisfy the burden of showing that non-minority, similarly situated employees were treated more favorably, the plaintiff's case cannot succeed. *See id.* Where the plaintiff in a gender discrimination claim fails to show that similarly situated male employees were treated more favorably, and where no other evidence of discrimination is present, summary judgment is proper. *See Holifield,* 115 F.3d at 1562 (citing *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 182 (1st Cir.1989)). Title VII does not remove an employer's right to make non-discriminatory employment decisions. *See Nix,* 738 F.2d at 1187. Under Title VII, an employer is entitled to make employment decisions and is entitled to interpret employment rules in any manner the employer chooses, so long as that decision or interpretation is not performed in a discriminatory fashion. *See id.*

In an attempt to satisfy the third part of the *McDonnell Douglas* test, Plaintiff alleges that three (3) male employees of Defendant, Belloise, Dunne, and Matthews, are similarly situated to Plaintiff. Plaintiff further alleges that although these three (3) male employees engaged in conduct comparable to the alleged improper conduct committed by Plaintiff, these

male employees were not similarly disciplined by Defendant. However, the Court finds that Plaintiff has not alleged evidence sufficient to establish these allegations.

■ In particular, Plaintiff states that the alleged improper conduct Plaintiff engaged in was similar to that engaged in by Belloise and that Plaintiff was disciplined more harshly than Belloise. In support of this Plaintiff states that Belloise's performance appraisals and performance improvement plan show that Belloise missed deadlines on projects he managed. Plaintiff states that Belloise was treated more favorably because Belloise was not reassigned for his conduct, while Plaintiff was removed from a project Plaintiff was managing for "simply [being] accused of recommending a path that *might* have caused [D]efendant to miss a deadline that was not even a firm deadline ..." (Dkt.24).

The Court finds that Plaintiff is not similarly situated to Belloise. Plaintiff was reassigned based on Defendant's belief that Plaintiff had gone beyond the scope of a "critical time-sensitive project after being warned not to do so." (Dkt.12). Plaintiff has not asserted any evidence that Belloise engaged in similar conduct. While Plaintiff has alleged that performance evaluations of Belloise establish the similarity between Plaintiff and Belloise, Plaintiff has failed to establish that Belloise engaged in any conduct similar to that which Plaintiff is alleged to have committed. The fact that Belloise allegedly received a poor performance review does not in itself establish a similarity between Belloise and Plaintiff. Plaintiff has shown no evidence that Belloise went beyond the scope of a "critical time-sensitive project after being warned not to do so." Even if Belloise's performance review suggested that Belloise failed to make deadlines, nothing has been shown to prove or suggest that those deadlines were of a similar nature to that which Plaintiff is alleged to have missed.

■ Plaintiff also seeks to establish that Dunne, another individual employed by Defendant, was similarly situated to Plaintiff. Plaintiff states that Dunne "had bad people skills and rubbed people the wrong way." Plaintiff also relies on a performance review of Dunne which states that Dunne "needs development in the area of interpersonal skills." Plaintiff alleges that Dunne spoke out against management and "threw a tantrum and said that he was not going to honor the business relationship [Defendant had with another company]." Plaintiff alleges that as a result of the actions taken by Dunne, a task force investigated Dunne and found that he was "acting in an inappropriate manner and was ... insubordinate in terms of meeting the company's obligations to the contract which had been made...." However, Plaintiff has failed to allege anything that would create the classification of being similarly situated. Plaintiff has failed to establish that Dunne acted in a manner that was similar to that which Plaintiff is accused. Throwing tantrums and saying that you are not going to honor a business relationship is not the same as going beyond the scope of a "critical time-sensitive project after being warned not to do so." Allegations that Dunne engaged in poor interpersonal skills simply do not rise to the level of the allegations against Plaintiff.

■ Plaintiff also seeks to establish that Matthews was similarly situated to Plaintiff. The only clear support Plaintiff attempts to establish for this allegation is that Matthews "directed his development team to go off in a new manner of development called object development, [which] ... would have taken much longer to [do]...." Even after making the broad assumption that Plaintiff's statement is well-founded, Plaintiff has failed to establish that Matthews was similarly situated. The fact that a supervisor directed the employees he supervised to act in a new manner, without more, does not establish that he was similarly situated. Plaintiff has completely failed to establish that the manner in which Matthews directed his

team to proceed was contrary to Defendant's direction and affected a "critical time-sensitive project." Plaintiff was not reassigned because Plaintiff simply directed her team to "go off in a new direction." Plaintiff was reassigned, according to Defendant, for repeatedly exceeding the scope of projects without Defendant's approval. Plaintiff's actions in relation to the IDP project appear to be the proverbial "straw that broke the camels back."

As well as the previous three (3) employees, Plaintiff also appears to suggest that Phil Carter, one of Defendant's directors, was also similarly situated to Plaintiff, although this is not entirely clear within Plaintiff's Complaint. Plaintiff states that Carter was described as being "an excellent technician who is sometimes lackadaisical in managing his areas and getting the highest level of performance." In relation to this description, Plaintiff points out that the only action taken to remedy Carter's performance problem was that Carter was spoken to. This, like the previous three examples, does not prove that Carter is similarly situated to Plaintiff. It is completely irrelevant that Carter was disciplined for matters that do not even hint at being similar to the allegations which allegedly lead to Plaintiff's reassignment.

■ The Court also notes that Plaintiff has failed to provide sufficient evidence that the alleged similarly situated male employees reported to the same supervisor as Plaintiff. In fact, one of the individuals that Plaintiff claims is similarly situated is the supervisor that Plaintiff states discriminated against her. While Plaintiff does appear to allege that all of these individuals and Plaintiff reported "indirectly" to Duncan, the Court finds that that is not sufficient. All employees of a business, at some "indirect" level, report to one supervisor. In order to be similarly situated, there must be some evidence that the comparable individuals dealt with the same supervisor. Plaintiff specifically refers performance evaluations performed by supervisors that Plaintiff was never evaluated by. The fact that all of these individuals had some supervisory connection with Duncan, in itself, is not sufficient. However, even assuming that all of the alleged similarly situated individuals dealt with Duncan, Plaintiff has still failed to establish the third part of the *McDonnell Douglas* test.

■ Even though the Court finds that Plaintiff has failed to establish the third part of the *McDonnell Douglas* test, the Court recognizes that at management levels it can be difficult to find "similarly situated employees." *See Holifield,* 115 F.3d at 1563. Therefore, the Court will continue to analyze Plaintiff's allegations. However, even after assuming that Plaintiff provided sufficient evidence of similarly situated non-minority employees that were treated more favorably than Plaintiff, Plaintiff still has not fulfilled the requirements of establishing a prima facie case of discrimination. Plaintiff has not provided the Court with any direct evidence or statistical evidence of discrimination. Plaintiff relies only on circumstantial evidence. Plaintiff alleges that at least one employee of Defendant believed that Plaintiff would not have been reassigned if Plaintiff was a male instead of a female. This allegation is not alone sufficient. One employee's belief, without more, is not sufficient to create an inference of discrimination. *See id.* at 1563–64. The Court has reviewed the entire record and has viewed all the evidence in the favor of Plaintiff, however, the Court can find no evidence sufficient to create an inference of discrimination.

■ Even assuming that Plaintiff had established a prima facie case of discrimination, Defendant is still entitled to summary judgment. Once Plaintiff establishes a prima facie case of discrimination, an inference of discrimination is created. Defendant must then rebut the inference of discrimination by presenting legitimate, non-discriminatory reasons for the employment action taken against Plaintiff. *See Burdine,* 450 U.S. at 248, 101 S.Ct. 1089. Defendant's burden is not a harsh burden and, therefore, is easily satisfied. *See Ho-*

*lifield,* 115 F.3d at 1564. Defendant has completely satisfied this burden. Defendant has produced various memoranda and performance reviews to support the non-discriminatory nature of Plaintiff's reassignment. Defendant's memoranda establish the existence of concern over the scope and increased risk associated with proposals Plaintiff was making. Evidence submitted also establishes that Defendant's concern regarding the scope and risk of Plaintiff's project was previously discussed with Plaintiff. These discussions focused on Plaintiff's need to contain the scope of the project. However, Plaintiff took actions to exceed the scope of the project without the review or approval by management or those individuals responsible for the project.

Plaintiff has failed to establish anything more than the fact that Plaintiff believes she was discriminated against based on her gender. This alone, once again, is not sufficient to establish a claim of discrimination. Plaintiff has failed to offer the Court any sufficient evidence that the alleged actions taken by Defendant were discriminatory or that the asserted reasons for those actions were pretextual. Plaintiff's opinion regarding Defendant's actions is not enough, in itself, to establish pretext of a sufficient nature to avoid summary judgment. *See Carter,* 870 F.2d at 585; *Pugh v. Heinrich,* 695 F.Supp. 533, 544 (M.D.Fla.1988).

As Defendant has presented sufficient, legitimate, non-discriminatory reasons for the employment action taken against Plaintiff and Plaintiff has failed to establish that Defendant's non-discriminatory reasons are a mere pretext, summary judgment is warranted. *See Holifield,* 115 F.3d at 1565–66.

### II. Constructive Discharge

In support of a claim of constructive discharge, the plaintiff must allege that the employer intentionally created a work environment so intolerable that the employee was compelled to quit involuntarily. *See Pugh,* 695 F.Supp. at 540 (citing *Buckley v. Hospital Corp. of America, Inc.,* 758

F.2d 1525, 1530 (11th Cir.1985)). To find constructive discharge the trier of fact must be satisfied that working conditions were so difficult or unpleasant that "a reasonable person in the employee's shoes would have felt compelled to resign." *Garner v. Wal–Mart Stores, Inc.,* 807 F.2d 1536, 1539 (11th Cir.1987) (citing *Bourque v. Powell Electrical Mfg. Co.,* 617 F.2d 61, 65 (5th Cir.1980)).

Once again, Plaintiff has failed to assert anything but opinion, conjecture, and unsupported conclusions to support the allegations of constructive discharge. In particular, Plaintiff states that a reasonable juror could find that Plaintiff was constructively discharged because: 1) Plaintiff was not permitted to bring a representative to a Human Resources meeting; 2) Plaintiff was demoted four (4) position levels; 3) Plaintiff was no longer eligible for stock options; 4) being assigned to the Year 2000 project was like "being put out to pasture"; 5) Plaintiff was not offered an opportunity to improve her performance; 6) Plaintiff was not offered any specific duties on the Year 2000 project; 7) Plaintiff was told by Matthews that Plaintiff had no future with Defendant, that Plaintiff should call a headhunter, and that Plaintiff would not be a manager for Defendant; 8) one of Defendant's managers wanted to terminate Plaintiff's employment with Defendant, but was persuaded to refrain from terminating Plaintiff by another manager; 9) the manager who wanted to terminate Plaintiff's employment remained an indirect supervisor of Plaintiff; 10) Plaintiff was humiliated; and 11) two (2) managers refused to investigate the allegations made against Plaintiff. (Dkt.24).

After considering each of the eleven (11) allegations Plaintiff has made in support of Plaintiff's constructive discharge claim, the Court finds that Defendant is, once again, entitled to summary judgment. Plaintiff has failed to allege sufficient facts to support a claim of constructive discharge. The facts alleged are not so "intolerable

that a reasonable person standing in the [plaintiff's] shoes would have been compelled to resign." *Garner*, 807 F.2d at 1539. Accordingly, it is

**ORDERED** that Plaintiff, Sue E. Weaver's, Motion to Strike, (Dkt.23), filed on May 21, 1999, be **granted** as previously delineated; that Defendant, Tech Data Corporation's, Motion for Summary Judgment, (Dkt.12), filed on April 5, 1999, be **granted;** and the Clerk of the Court be **directed** to enter judgment consistent herewith.

**DONE and ORDERED.**